390 So.2d 1318 (1980)
Mrs. Marie Camps OSTER
v.
WETZEL PRINTING, INC., et al.
No. 66687.
Supreme Court of Louisiana.
November 10, 1980.
*1320 Sidney F. Braud, Leonard B. Levy, New Orleans, for plaintiff-applicant.
Rene A. Curry, Jr., New Orleans, for defendants-respondents.
DENNIS, Justice.
In this workers' compensation case we must determine if the plaintiff, a sixty-one year old bookbinder whose hand was severely injured in her employer's machine, is unable "to engage in any gainful occupation for wages" within the meaning of La.R.S. 23:1221(2) (Supp.1975) and thus should be awarded compensation for permanent total disability. A commissioner appointed by the trial court determined that the plaintiff, Mrs. Oster, was totally and permanently disabled. Initially the trial court concurred in all respects with the commissioner's report, but subsequently awarded Mrs. Oster only permanent partial disability compensation. The court of appeal decided total temporary disability compensation for a period of 104 weeks should be awarded, otherwise affirming the trial court judgment. We reverse and amend the judgment of the court of appeal to award Mrs. Oster permanent total disability benefits.
In determining whether an employee is permanently and totally disabled, it is not a prerequisite that he be absolutely helpless. If the evidence of his physical impairment and of other such factors as his mental capacity, education, and training indicates that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist, the injured employee is entitled to total disability compensation unless the employer or his insurer is able to show that some form of suitable work is regularly and continuously available to the employee within reasonable proximity to his residence. In the present case, the plaintiff's employment capabilities were severely restricted because of her emotional, educational, and physical limitations, as well as her age, and the employer did not demonstrate the existence of an actual job in the employee's general locality at which she has a reasonable opportunity to be employed. Thus, Mrs. Oster is properly deemed totally and permanently disabled and is entitled to benefits calculated on that basis.
On December 1, 1976, while Mrs. Oster, a sixty-one year old bookbinder employed by Wetzel Printing, Inc., was attempting to unclog a printing machine, a fellow worker restarted the machine. The plaintiff's right hand became entangled in the gears and could not be extracted for roughly one hour. As a result of the incident, Mrs. Oster lost large portions of the index and middle fingers of her right hand and sustained a severe laceration of her ring finger as well.
Wetzel's workers' compensation insurer, United States Fidelity and Guaranty Company, paid the plaintiff benefits of $92.24 per week for 41 weeks. Thereafter, the insurer tendered an offer of $37.98 per week for 107 weeks, corresponding to 41% of the schedule loss for a hand under La. R.S. 23:1221(4)(e) and (o). The plaintiff refused this offer and filed suit claiming *1321 that she was totally and permanently disabled.
The trial judge appointed a commissioner to evaluate the evidence presented and make recommendations. The commissioner made a thorough report in which he determined that the plaintiff was totally and permanently disabled. The testimony heard by the commissioner was given by two orthopedic surgeons, Dr. Stokes and Dr. Licciardi; a psychiatrist, Dr. Diamond; and by the plaintiff, Mrs. Oster.
Dr. Stokes was the treating physician and had close contact with the plaintiff from the date of injury until he discharged her June 6, 1977. He made no further examination of the plaintiff in the intervening period of slightly over one year before trial on August 15, 1978. Dr. Stokes had performed the surgery amputating the portions of the index and middle fingers and stitching the laceration on the ring finger. Upon discharge of Mrs. Oster, he estimated that she suffered a permanent total impairment of the middle finger, 85% impairment of the index finger and 35% impairment of the ring finger of her right hand. Dr. Stokes testified that in his opinion this translated to a 40.5% disability of the right hand. He found that the plaintiff suffered from hypersensitivity, a condition common in amputation cases in which the injured area becomes extremely sensitive and the slightest touch sometimes causes great pain. Dr. Stokes testified that at the time of discharge of Mrs. Oster, her hypersensitivity had diminished and was within acceptable levels, and that he felt the pain would further subside. He recommended that she try to use her hand to find the extent of her disability. He stated the plaintiff was employable "within the confines of her amputation," but did not know what work would be within those confines, nor just what Mrs. Oster's former duties as a bookbinder entailed.
Some nine months after being discharged by Dr. Stokes, Mrs. Oster was seen by a second orthopedic surgeon, Dr. Licciardi, for evaluation purposes. Consistent with Dr. Stokes' findings, Dr. Licciardi found that the impairment of Mrs. Oster's right hand was between 35 and 45% with residual nerve damage and some numbness of the fingers. Contrary to Dr. Stokes' prediction, however, Dr. Licciardi also found that the plaintiff still suffered to a significant degree from hypersensitivity. He noted that the pain generally decreases with time, but did not expect this in Mrs. Oster's case since he examined her well over one year after the accident. This combination of sensitivity and numbness caused a marked lack of coordination, which in his opinion, would preclude Mrs. Oster from performing a job that required the use of both hands.
In addition to plaintiff's physical injuries, Mrs. Oster suffered an emotional problem as the result of the accident. On November 4, 1977, Dr. Diamond, a psychiatrist, examined plaintiff and diagnosed her condition as a post-traumatic psychoneurotic reaction with marked anxiety and depression. According to Dr. Diamond, plaintiff has a marked depression which centers on the present deformity of her hand. She also has acquired a fear of machines and a feeling of being of little worth because of her inability to work. The doctor recommended two years of psychiatric treatment. The plaintiff, however, could not afford to pay the approximately $6240 that such a treatment would cost.
On May 10, 1978, Dr. Diamond again examined Mrs. Oster finding minimal improvement. The plaintiff was still very emotional and depressed. The doctor testified that therapy with individuals over 55 is a slow process and was pessimistic about Mrs. Oster's chances of improvement. In his opinion, Mrs. Oster's ability to return to gainful employment at that time was "zero."
Mrs. Oster testified that she was 61 years old at the time of the accident. She had been employed for 12 years at various printing shops throughout the city, working for the last six and one-half years at Wetzel Printing. Her work at these printing shops, as well as all her previous jobs, required the use of both hands. She had no formal education past one year of junior *1322 high school. She testified further that she had trouble doing even simple household chores and believed that, since her trade emphasized speed and production, her old duties were beyond her capabilities. Mrs. Oster testified that her former employer did not contact her after her accident.
Based on the evidence presented to him, the commissioner recommended that the plaintiff be declared totally and permanently disabled. The trial court accepted the findings of evidentiary facts proposed by the commissioner. He concluded, however, that these facts warranted an ultimate conclusion that plaintiff was only partially, permanently disabled.
On appeal to the fourth circuit, the judgment of the trial court was modified. The appellate court held that plaintiff's disability was primarily psychological. In fact, that court disregarded the physical disability noting that "the only disability that this record established would `hopefully' (if guardedly) be eliminated by two years of psychotherapy." Oster v. Wetzel Printing, Inc., 378 So.2d 195, 196 (La.App. 4th Cir. 1980). Based on this conclusion, the court of appeal awarded plaintiff benefits from temporary total disability for 104 weeks.
The crucial question in this case is one of statutory construction: What degree of impairment disables an employee "to engage in any gainful occupation for wages?" Although the trial court and the court of appeal failed to set forth a definition of inability to engage in any gainful occupation for wages, it is apparent these tribunals thought it requires that an employee be completely helpless or, at least, completely unemployable. We reject this position as being contrary to the aim of the legislation in view of its language, history, and social purpose.
Prior to the 1975 amendment of La.R.S. 23:1221(2), redefining total and permanent disability, the statute provided that a worker would be deemed totally and permanently disabled if he was unable to "do work of any reasonable character." Under the jurisprudential interpretation of this language, an injured employee was found totally and permanently disabled in virtually all cases in which he was no longer able to do the same or similar work as that in which he was engaged at the time of the injury. Knispel v. Gulf States Utilities Co., 174 La. 401, 141 So. 9 (1932). Criticism of the interpretation made by this Court in Knispel and its progeny has surfaced intermittently. For example, Professor Arthur Larson states that in this line of cases Louisiana courts have all but forgotten the normal meaning of total disability while making artificial and contradictory distinctions turning on the similarity of claimant's post-injury occupation to that immediately preceding the injury. Larson, The Law of Workmen's Compensation, § 57.22, pp. 10-48 (1976). The Knispel interpretation resulted in an unusually high percentage of total and permanent disability awards when compared with workers' compensation cases in other states, Malone & Johnson, Workers' Compensation § 273 in 13 La.Civ.L. Treatise 606 (2d ed. 1980). According to Professors Malone and Johnson, factors such as the relatively low level of benefits payable at the time and the inability of courts to exercise continuing supervision over compensation awards probably influenced them to err in favor of finding the worker totally disabled. Malone & Johnson, supra, at § 274, pp. 607-615. If a court overestimates an injured worker's ability to rejoin the workforce, not only does the worker suffer a personal tragedy, but also the public fisc may be further burdened.
In 1975, La.R.S. 23:1221(2) was revised to constrict the broad "same or similar occupation" formula then being applied by the courts. Total disability compensation can now be obtained only if the employee is unable "to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged ...." La. R.S. 23:1221(2) (Supp.1975). It was not the aim of the legislative revision, however, to require that an employee be completely helpless before he could recover total and permanent disability compensation. The extensive amendments made in 1975 more *1323 likely represent a compromise between labor and industry: employers benefiting from a narrower definition of total disability, and employees receiving increased benefits, both in amount and duration of payments. The possibility that an injured employee could obtain a higher paying job in a dissimilar field and still receive total disability compensation was eliminated. Nevertheless, most of the basic reasons supporting the Knispel doctrine originally still exist except for the now greatly increased benefits payable and weigh against reading the statute too restrictively. Malone & Johnson, Workers' Compensation, supra, § 276. If the legislative purpose had been to replace the extremely broad Knispel formula with a definition for total disability more restrictive than that of any other jurisdiction, surely the drafters would have chosen a more restrictive definition: "unable to engage in any gainful occupation for wages" is not synonymous with "unable to obtain employment." Malone & Johnson, Workers' Compensation, supra, § 276 at pp. 625-26; Johnson, Work of the Louisiana Appellate Courts 1977-78, 39 La.L.Rev. 881, 892-93 (1979). Furthermore, a requirement that an employee be utterly helpless in order to recover total permanent disability benefits would violate the compensation principle that those persons who enjoy the product of a business should ultimately bear the cost of the injuries or deaths that are incident to its production. Malone & Johnson, Workers' Compensation, supra, § 32. An injured employee, finding himself at a severe disadvantage in competing with healthy counterparts in any recognized labor market, should not be forced to bear his economic loss alone, unaided by the enterprise his labor has benefited.
Other jurisdictions with similar total disability statutes in keeping with the basic principle of workers' compensation, have developed a body of interpretations known as the "odd-lot" doctrine. E. g., Lyons v. Industrial Special Indem. Fund, 98 Idaho 403, 565 P.2d 1360 (1977); Interlake Steel Corp. v. Industrial Comm'n, 60 Ill.2d 255, 326 N.E.2d 744 (1975); Barbato v. Alsan Masonry & Concrete, Inc., 64 N.J. 514, 318 A.2d 1 (1974); Deaton v. State Accident Ins. Fund, 13 Or.App. 298, 509 P.2d 1215 (1973); Facciolo Paving & Const. Co. v. Harvey, 310 A.2d 643 (Del.1973); Brown v. Safeway Stores, 82 N.M. 424, 483 P.2d 305 (App.1970); Reese v. Preston Marketing Assoc., 274 Minn. 150, 142 N.W.2d 721 (1966); Nordahl v. Erickson, 174 Neb. 204, 116 N.W.2d 275 (1962). Although any one sentence description of the doctrine necessarily tends to oversimplify it, some treatise writers have provided helpful starting points for understanding it as applied by the courts. Professor Johnson observes:
"Simply stated, this doctrine is that a claimant may be considered totally disabled if, after his injury, he is considered an `odd-lot' in the competitive labor market, i. e., that he may be capable of holding various jobs from time to time, but that the kind of work he may perform is so limited in quality, dependability or quantity that a reasonably stable market for that work does not exist." Johnson supra, 39 La.L.Rev. at 889.
In his treatise on workers' compensation, Larson says that the essence of the odd-lot doctrine, which has been accepted in virtually every jurisdiction,[1] is
"the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the super-human efforts of the claimant to rise above his crippling handicaps." Larson, supra, § 57.51, pp. 10-109 and 10-119.
In order to determine whether the plaintiff fits within this category of odd-lot workers, he must show that because *1324 of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, that he "cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity." Reese v. Preston Marketing Assoc., 274 Minn. 150, 142 N.W.2d 721, 723 (1966). If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd-lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with "a gainful occupation." It is fairer to place the burden on the defendant to show that there are steady jobs available to the plaintiff, after plaintiff has shown his odd-lot status, than to require the plaintiff to prove the universal negative of not being employable at any occupation. Brown v. Safeway Stores, 483 P.2d 305, 308 (N.M.App.1971); Lyons v. Industrial Special Indem. Fund, 98 Idaho 403, 565 P.2d 1360, 1363 (1977); Larson, supra, § 57.61 at pp. XX-XXX-XXX. This apportionment of the burden of proof is equitable in our jurisdiction for the additional reason that the Louisiana statutory scheme does not include any effort to rehabilitate the injured worker. Thus, for all the reasons stated above and because we consider the doctrine to be consistent with the underlying policy and purpose of our workers' compensation statute, and essential to its interpretation in accordance with the compensation principle, we conclude that the odd-lot doctrine should be employed as the guiding concept in determining permanent total disability.
Applying the odd-lot analysis to the facts as found by the commissioner and adopted by the trial court, we hold that the plaintiff is totally and permanently disabled.
Plaintiff's evidence shows that she was 61 years old at the time of the accident in December, 1976. She has no formal education beyond one year of junior high school and her previous employment has been limited to manual labor, for the past fifteen years as a skilled journeyman bookbinder. She is right-handed. Parts of her index and middle fingers of that hand were amputated. Her ring finger was severely injured and partially disabled. Because of the injuries of these fingers, the plaintiff still suffers from hypersensitivity. According to the unrebutted testimony of the psychiatrist, she suffers from a psychoneurotic reaction to her injury, is emotional and depressed. Although the psychiatrist recommended a two-year course of therapy, and thought it possible Mrs. Oster would realize some improvement at the end of this time, he stated that her "prognosis at best is guarded." At the time of the trial, the psychiatrist rated her ability to return to gainful employment as "zero."
We conclude that Mrs. Oster established a prima facie case that she is totally and permanently disabled. The evidence shows that, because of her severely injured hand, her neurosis, her lack of education and her age, she can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist.
The evidence introduced by the defendant fails to rebut a finding that Mrs. Oster is permanently totally disabled to engage in a gainful occupation for wages. The defendant offered only the testimony of the treating physician to rebut the plaintiff's showing of permanent, total disability. Dr. Stokes testified that he had advised Mrs. Oster to try to go back to work, but never made an unqualified statement that she was able to work. His testimony reflected more the nature of advice that use of the hand might prove therapeutic. We agree with the commissioner that Dr. Stokes' testimony regarding the plaintiff's ability to return to work was "vague and indefinite." Also Dr. Stokes did not examine the plaintiff *1325 after June 6, 1977 which was over one year prior to trial. We find the defendant's evidence insufficient to rebut Mrs. Oster's showing that she can perform no services other than those which are so limited that a reasonably stable market for them does not exist. Accordingly, we hold that the plaintiff is entitled to an award of total and permanent disability benefits.

Decree
For the reasons assigned, we amend the judgments of the previous courts so as to award the plaintiff total and permanent disability benefits commencing October 5, 1977 for as long as the plaintiff's disability continues, together with legal interest on all past due installments and for all costs of these proceedings. The judgment of the court of appeal is affirmed with regard to the award of penalties and attorney's fees.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
MARCUS and BLANCHE, JJ., concur and assign reasons.
MARCUS, Justice (concurring).
I interpret La.R.S. 23:1221(2) to mean that an employee is totally and permanently disabled when the disability makes him unable to engage in any occupation for which he is qualified. In the instant case, Mrs. Oster established by a preponderance of the evidence that, because of her severely injured hand, her neurosis, her lack of education and her age, she is unable to engage in any gainful occupation for which she is qualified. Accordingly, I respectfully concur.
BLANCHE, Justice (concurring).
I concur based on the fact that I agree Mrs. Oster is totally and permanently disabled within the meaning of R.S. 23:1221(2), but I cannot agree with the injection of the majority's version of the "odd lot doctrine" into our jurisprudence.
I fully agree with the majority that an employee should not be required to prove that he is absolutely helpless before he is entitled to recover total and permanent disability benefits under La.R.S. 23:1221(2). Rather, that statute places the burden on an injured employee to prove that he is unable to engage in any gainful employment. The phrase "unable to engage in gainful employment" does not imply, as is suggested by the majority, that the employee be absolutely helpless or that he can engage only in odd jobs from time to time. Rather, in order to be able to engage in gainful employment, an employee must be able to perform activities which, individually or in combination, are the type required of him in a recognized field of work.
The statute in question, however, focuses on the employee's physical and mental abilities or disabilities to perform such work. It does not focus on the availability of work in the area of the employee's residence. According to the "odd lot doctrine" as set out by the majority, availability of work which the employee can perform is one of the factors in establishing a prima facie case of "odd lot" status. At the point where plaintiff establishes this status, the burden shifts to the employer to, in effect, find the employee a job that is available to him in the area of his residence in order to avoid a determination of total and permanent disability. This approach may be a socially desirable one, but it is not within the province of the judiciary to so legislate.
NOTES
[1] Louisiana has not previously had need of such a doctrine. Under the jurisprudence interpreting the pre-1975 law, a person who, because of his work related injury, could not go back to the same or similar employment was termed permanently and totally disabled. Therefore, our definition of permanent and total disability was much more liberal in granting benefits than the odd-lot doctrine. Johnson, supra, 39 La.L.Rev. at 892.