LOTTINGER, Judge.
This is a workmen’s compensation case. From a trial court judgment finding the plaintiff totally and permanently disabled *1261 and awarding penalties and attorney’s fees for arbitrary and capricious termination of compensation benefits, the defendants appeal.
The issues on appeal are whether the plaintiff is totally and permanently disabled or only partially disabled; whether the defendant arbitrarily and capriciously terminated compensation benefits; and whether La.R.S. 23:1221(3), as interpreted by the trial court, violates the due process clauses of the Louisiana and the United States Constitutions.
The plaintiff, Moses Celestine, a 50-year-old, semi-literate man with a seventh grade education who worked as a diesel mechanic for more than 30 years, brought this compensation suit for injuries incurred on March 22, 1977 when his left leg was run over by a cement truck upon which he was working. As a result of the accident, the plaintiff suffered torn ligaments around the knee and a partially detached meniscus, which is a cartilage cushion between the knee bones. Nonsurgical, conservative treatment resulted in no improvement and the plaintiff was thereafter referred to Dr. Peter H. Rhymes, an orthopedic surgeon. Dr. Rhymes’ non-surgical attempts to heal the knee were also unsuccessful, and on June 6, 1977, Dr. Rhymes performed a medial meniscectomy, which is a removal of the knee cartilage on the inside of the left knee. The plaintiff remained in the hospital for about four days. He was later fitted with a knee brace and began physical therapy-
In his testimony at trial, Dr. Rhymes gave a detailed summary of his treatment of the plaintiff. Although the plaintiff at times showed some signs of improvement, Dr. Rhymes Soon realized that the physical therapy often aggravated the soreness and pain in the plaintiff’s knee. On January 16, 1978, Dr. Rhymes diagnosed chondromala-cia, which is an area of softening of the gristle or articular cartilage of the back of the kneecap. The doctor also noted crepi-tance, a grinding and popping sensation in the knee which causes pain. The doctor said the chondromalacia was causally connected to the trauma. This disease advanced over the course of the next two years.
Dr. Rhymes’ conclusion at trial was that plaintiff could not perform any job which required him to squat, bend, kneel, climb up and down stairs or ladders or walk on uneven ground. These activities would aggravate the plaintiff’s knee problem and cause pain. Plaintiff could not lift more than 20 to 25 pounds. Dr. Rhymes did not think the plaintiff would improve considerably in the future and he felt that the plaintiff was completely disabled from returning to his job as a diesel mechanic. The plaintiff has a 20% functional impairment in his left leg which equals about a 10% impairment of the left lower extremity and a 5% impairment of the total man. Dr. Rhymes said Celestine could work only at jobs which do not involve the physical restrictions he has imposed.
In December of 1979, plaintiff saw an occupational therapist, Barbara Lippert Groening, at the behest of the defendant. Groening conducted a one hour interview with Mr. Celestine and a physical capacities evaluation consisting of 20 broad physical demands which the U. S. Department of Labor utilizes to determine which types of jobs the person being evaluated is physically qualified to perform. From her evaluation, Groening determined that Celestine would not be able to return to work as a diesel mechanic but that he might be able to do some other kind of mechanical work which involved use of hand skills. She suggested, as examples, small engine repairs, laundromat management, locksmith work and possibly work as an attendant at a self service gasoline station. On cross examination, Groening admitted that some of the jobs she suggested, like small engine repair at home, would require Celestine to make modifications on his home and could possibly require retraining. She said Celestine would find difficulty securing employment in the major industries of fishing, farming and oil in the Terrebonne Parish area where Celestine lives, and that any job outside of the home would have to be within about 3 *1262 miles of Celestine’s home because of the problems he experiences with his knee when he drives longer than that distance. Any type of job involving lifting objects heavier than 20 to 25 pounds would require help for the lifting. As a self-employed worker, Celestine would also need help for the bookkeeping, Groening testified. Like Dr. Rhymes, Groening testified that Celestine was completely cooperative in the evaluation. She stated further that Celestine and his wife were both interested in the possible jobs that he could handle.
The trial court ruled, with neither written nor oral reasons, that Celestine proved he was totally and permanently disabled within the meaning of La.R.S. 23:1221. He ordered defendants to pay $95.00 per week during the period of disability beginning with the date of termination on May 12, 1979. He also found that the defendant’s termination of workmen’s comp benefits was arbitrary and capricious and he therefore cast the defendants for 12% statutory penalties for delinquent payments as well as attorney’s fees in the amount of $3,000.00.
PERMANENT AND TOTAL DISABILITY
The defendants claim on appeal that the plaintiff failed to show that he was totally and permanently disabled. They claim they showed, through testimony of Dr. Rhymes and two therapists, that plaintiff is able to “engage in any gainful occupation for wages...” La.R.S. 23:1221(2). Defendants concede that the plaintiff is unable to perform the work of a diesel mechanic but they contend that plaintiff can work as a small engine or appliance repair man, a laundromat manager, a self service gasoline station attendant or other jobs which would not require physical exertion on the knee. However, the defendants’ expert evaluators admitted that many, if not all, of the jobs the plaintiff would do would require the plaintiff to be assisted by another person, to make modifications to his house, to be retrained and/or to be in close proximity to his job site.
In a recent case, the Louisiana Supreme Court fully endorsed and adopted the “odd lot” doctrine for the Workmen’s Compensation law of Louisiana. Oster v. Wetzel Printing, Inc., et al., La., 390 So.2d 1318 (1980).
In Oster, the court found that a 61-year-old right handed book binder whose hand was mangled in her employer’s machine, who developed an emotional problem as a result of her injury and who had no formal education past one year of junior high school was totally and permanently disabled because she was an “odd lot” worker. The court noted that while the 1975 amendment to La.R.S. 23:1221(2) substantially changed the previous ease with which a worker could be found to be totally and permanently disabled, the amendment does not require that an employee be “utterly helpless” in order to recover total and permanent disability benefits. In so holding, the court stated:
“In order to determine whether the plaintiff fits within this category of odd-lot workers, he must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, that he ‘cannot perform the substantial and material parts of some gainful work or occupation with reasonable ‘continuity.’ [citation omitted] If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd-lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with ‘a gainful occupation.’ ”
*1263 The court therefore concluded that “the odd-lot doctrine should be employed as the guiding concept in determining permanent total disability.”
The court went on to hold that because of the plaintiff’s severely injured hand, her neurosis, her lack of education and her age, she could not perform services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them did not exist.
In the case at bar, Celestine, through his testimony and that of his physician, proved decisively that he is now at a substantial disadvantage in the competitive labor market. He certainly is incapable of performing the type of work he previously performed. He showed that his lack of education, training and ability to work without the assistance of a helper place him at a substantial disadvantage in the labor market. His age and physical condition are also factors which make him at most a marginal employee. Having so shown, the plaintiff has made out a prima facie case of permanent and total disability as an odd lot worker. Furthermore, the employer and insurer failed to show that some form of suitable work is available to the claimant in the area where he resides. The physical therapist who examined the plaintiff testified that work in the three major industries in the area where the plaintiff resides is not available to him. Jobs that might be available to plaintiff would require him to either be retrained or would require him to obtain the assistance of at least one other person to perform them. Any job plaintiff obtains would also have to be in close proximity to his residence because of his inability to drive for long distances. We hold, therefore, that the plaintiff is an odd lot worker and is entitled to total and permanent disability benefits. The trial court’s finding in this regard will be affirmed.
PENALTIES AND ATTORNEY’S FEES
The defendants claim they were not arbitrary and capricious in terminating compensation benefits because their experts had determined that the plaintiff was capable of engaging in some gainful occupation for wages. The defendants contend they were acting prudently by seeking judicial resolution of the issue of whether plaintiff could engage in any gainful employment. We find no merit in this specification. Although the defendants claim that at the time of termination they “knew” that the plaintiff could not only return to some gainful employment but to an employment to which he might earn wages equal to or in excess of those in his prior employment, we find no justification for this in the record. There is simply nothing in the record to show that plaintiff’s condition changed appreciably from the time comp benefits began until the time the benefits were terminated. The evidence shows the contrary— that plaintiff’s condition had not changed.
The trial court judgment awarding penalties and attorney’s fees will be affirmed.
THE CONSTITUTIONAL ISSUE
As a last specification of error, the defendants claim that La.R.S. 23:1221(3) which deals with partial disability is unconstitutional because it violates the constitutional guarantee of substantive due process. This constitutional argument was neither pleaded nor mentioned at the trial level and we will not delve further into it on appeal. As a general rule, an appellate court will not decide a constitutional question which has not been raised at trial. Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1979). This rule is applicable in the case at bar.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed in all respects. The defendants will pay the costs of this appeal.
AFFIRMED.