KLIEBERT, Judge.
The plaintiff, Curtis E. Barrios (hereafter Barrios), was employed by Rheems Manufacturing Company (hereafter Rheems), as a press operator for 30 years. On May 20, 1980, Barrios was operating the press when a rod broke, resulting in the press crushing Barrios’ right hand. At the time of the injury, Barrios was 60 years of age, had a ninth grade education and had no other skills or specialized training other than being a janitor.
On August 8,1980, the plaintiff filed suit against Rheems and its insurance carrier, The Home Indemnity Company (hereafter Home), claiming total disability compensation benefits plus penalties and attorney fees. Rheems and Home filed an answer admitting the employment and the injury but denying all other allegations of the petition.
Trial on the merits was had on April 10, 1981. At commencement of the trial, the parties stipulated that “medicals paid to date is $7,495.88; that compensation paid to date is $5,497.14.”[1] Payments were made by Home. The plaintiff testified in person. Dr. Morris Fisher, the treating physician’s deposition dated January 7, 1981 was submitted in evidence by stipulation. The only other witness was Fadious Foret, a supervisory employee of Rheems and a friend of Barrios.
Barrios testified that he was naturally right handed, was hospitalized for about three weeks and had attempted to return to *864 work for the first time on November 26, 1980. He worked for about three months and then decided to leave (he stopped going to work three or four weeks before the trial) with the idea of taking five weeks of vacation and then retiring because he could not perform the work he was assigned to do without pain. Barrios stopped working after he was involved in an automobile accident in March, 1981. He sustained rib injuries in the accident and obtained medical treatment for the injuries. Barrios denies receiving any instructions from his doctor relative to the continuation of work after sustaining the rib injuries. He also testified that before the injury he had planned on retiring at 62 or 65, depending on how he felt. Barrios had worked for Rheems for thirty years and prior thereto had been a clerk in a grocery store and had worked at cleaning business machines. During the period Barrios returned to work, he would tape his fingers with bandaids. Nevertheless, blood blisters would form on the “nubs” of the amputated fingers.
Mr. Fadious Foret, an employee of Rheems and a personal friend of Barrios, testified that when Barrios returned to work, he assigned him to all types of work, except the operation of the heavy press on which he was injured, and instructed Barrios to inform him if he could not perform the work. At no time did he receive a complaint from Barrios about his ability to perform the assigned work. He stated, however, that Barrios had talked to Rheem about stopping work and retiring before he was injured in the automobile accident.
Dr. Fisher had last seen Barrios on December 20, 1980. When first seen by him, Barrios had “severe tissue destruction on the second and third fingers of the right hand and a crushed fracture of the distal end of the right thumb.” He amputated the second and third fingers and repaired the remainder of the hand. Dr. Fisher described the injuries when he last saw Barrios as follows:
“He had limited motion in the right thumb, which had a fracture when he originally got injured. The amputated fingers, the second and third fingers, were healing satisfactorily. They were still tender and still swollen. So he was having pain in the three fingers he had injured. In the other two fingers there was limited extreme motion of the fingers due to some swelling of the fingers, which I’m sure was just a reaction to the healing from the injury he sustained.”
He testified that Barrios was not on pain medication at the time of his last visit and that he considered Barrios’ anatomical disability as:
“... he has loss of the two fingers and right now I would estimate 35% permanent disability of that right hand.”
As to Barrios’ functional disability, Dr. Fisher believed that he would never be able to lift heavy objects with his right hand, but in time would be in a position to lift light objects, but could never return to operating the press he was working on at the time of the injury.
The trial judge concluded Barrios was totally disabled and awarded compensation benefits as such, together with penalties and attorney fees. The defendants have appealed. In brief here, they do not contest the trial judge’s ruling of total disability but strenuously argue that penalties and attorney fees should not have been awarded, or alternatively, the $5,000.00 award for attorney fees is excessive.
The disability benefit provisions of the workmen’s compensation statute, i.e., R.S. 23:1221(2) read as follows: *865 and R.S. 22:658 is the authority for assessing penalties and attorney fees against the insurer, where the insurer discontinues the payment of compensation benefits, and such failure is found to be arbitrary, capricious and without probable cause.
*864 “Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury was particularly fitted by reason of education, training and experience, 66 and % percen-tum of wages during the period of such disability.”
*865 The crucial question here was whether Barrios’ impairment disabled him from “engaging in any gainful occupation for wages” within the meaning of R.S. 23:1221(2). As observed by the trial judge in his reasons for judgment, since the supreme court decision in Oster v. Wetzel Printing Inc., 390 So.2d 1318 (La.1980), the answer to the question is to be determined by application of the “odd-lot” doctrine.
Justice Dennis, in the Oster case, supra, at page 1323 and page 1324 stated the criteria for application of the “odd-lot” doctrine as follows:
“In order to determine whether the plaintiff fits within this category of odd-lot workers, he must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, that he “cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity.” Reese v. Preston Marketing Assoc., 274 Minn. 150, 142 N.W.2d 721, 723 (1966). If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd-lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with “a gainful occupation.” It is fairer to place the burden on the defendant to show that there are steady jobs available to the plaintiff, after plaintiff has shown his odd-lot status, than to require the plaintiff to prove the universal negative of not being employable at any occupation. Brown v. Safeway Stores [82 N.M. 424], 483 P.2d 305, 308 (N.M.App.1971); Lyons v. Industrial Special Indem. Fund, 98 Idaho 403, 565 P.2d 1360, 1363 (1977); Larson, supra, § 57.61 at pp. 10-136-137. This apportionment of the burden of proof is equitable in our jurisdiction for the additional reason that the Louisiana statutory scheme does not include any effort to rehabilitate the injured worker. Thus, for all the reasons stated above and because we consider the doctrine to be consistent with the underlying policy and purpose of our workers’ compensation statute, and essential to its interpretation in accordance with the compensation principle, we conclude that the odd-lot doctrine should be employed as the guiding concept in determining permanent total disability.”
In Oster, supra, Mrs. Oster, the plaintiff, was 61 years of age, had no formal education other than one year of junior high, her previous employment had been limited to manual labor, she was right handed and her injuries to her right hand consisted of the amputation of parts of her index and middle fingers with a severe crushing of her ring finger, leaving it partially disabled. According to the medical testimony, Mrs. Oster still suffered from hypersensitivity because of the injuries to her fingers. Additionally, according to the unrebutted testimony of her psychiatrist, she was suffering from the psychoneurotic reaction to her injury and her ability to return to gainful employment was zero. Under those facts, Justice Dennis at page 1324 said:
“. .. The evidence shows that, because of her severely injured hand, her neurosis, her lack of education and her age, she can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist.”
and, therefore, concluded Mrs. Oster was totally and permanently disabled.
*866 In the present case, Mr. Barrios’ age, his lack of formal education and the injuries to his right hand were similar to those sustained by Mrs. Oster. However, here, unlike Oster, the plaintiff had returned to work on his own, was in fact performing work similar to that performed when injured and there is no evidence or indication that plaintiff had developed a neurosis from the hypersensitivity of the fingers. Instead, there is medical evidence that there was no neurosis from the amputation or injury. Additionally, here, there is a factual dispute as to whether Barrios had left the employment three or four weeks before the accident because he could no longer perform the work without pain or whether he left work because of injuries sustained in an automobile accident. Also, the medical testimony here indicates that Barrios was still under treatment and at the time of the doctor’s last examination, in December, 1980, the hand was still in the healing process, thus raising the question as to whether Barrios could perform the work he was performing without pain after the hand had completely healed.
The trial judge, following the cri-terias enunciated in the Oster case, supra, and Lattin v. Hica Corp. 395 So.2d 690 (La.1981), resolved the disputed issues in favor of the plaintiff by finding him totally and permanently disabled. We cannot say he committed manifest error in this holding. However, we believe he erred in assessing penalties and attorney fees. Although the trial judge gave valid and ample reasons for finding the plaintiff was totally and permanently disabled, he gave no reasons for determining that the defendant acted “arbitrary, capricious or without probable cause” in terminating the compensation benefits when Barrios returned to work.
Barrios was not discharged by his treating physician nor was he advised to return to work by his doctor. He returned to work on his own and performed the work assigned to him to the full satisfaction of his employer. After he sustained injuries in an automobile accident, he stopped working. Although the record is unclear, it appears that at the time of trial Barrios was actually on a five week vacation preparatory to going on retirement. Therefore, from the time of the injury to the time of trial Barrios received compensation benefits when he was off of work and his regular salary while at work, except at most for a three or four week period immediately before trial and even as to those three or four weeks, he apparently received vacation pay.
There is no evidence indicating that the defendant acted arbitrarily, capriciously or without probable cause when it terminated compensation benefits when the plaintiff returned to work. When Barrios returned to work and performed the work assigned satisfactorily, the defendant was justified in terminating the compensation payments because Barrios was then engaged “in a gainful occupation for wages similar to that engaged in when injured”. Barrios, therefore, had the burden of proving that he was able to perform this work only under pain. The defendant was not arbitrary or capricious in making the decision to defend, where Barrios had actually performed the work for three months and did not stop performing the work until he was involved in an automobile accident three or four weeks before trial and the only medical evidence indicated that Barrios’ work related injuries were still in the process of healing. Employers or their insurers are not to be penalized for taking their case to court for judicial resolution of a close factual question. Thompson v. Natchitoches Parish Hospital Service District, 335 So.2d 81 (3rd Cir. 1976).
Accordingly, the trial court judgment is affirmed insofar as it awarded total and permanent workmen’s compensation benefits, medical payments and expert witness fees. The judgment awarding penalties and attorney fees is reversed and set aside. All costs of this appeal are assessed to the defendants.
AFFIRMED IN PART, REVERSED IN PART.

. Plaintiff in brief stated that the compensation payments were terminated on November 27, 1980. The trial judge also stated in his reasons for judgment that compensation benefits were paid to November 27, 1980.