CARTER, Judge:
This is a workmen’s compensation case. Claude S. Morgan brought this workmen’s compensation action to recover disability benefits, penalties and attorney’s fees from defendant, Offshore Hammers, Inc. After trial judgment was rendered in favor of Offshore Hammers, denying Morgan’s claims for disability benefits.
Morgan appeals devolutively from the trial court judgment raising the following issues:
(1) Whether the plaintiff’s heart attack is a compensable injury under LSA-R.S. 23:1221;
(2) Whether the trial court erred in not finding plaintiff to be totally and permanently disabled as a result of personal injuries suffered in a work-related accident while employed by defendant;
(3) Whether the trial court committed manifest error in finding that plaintiff did not establish an “odd-lot” classification entitling him to disability benefits; and
(4) Whether the trial court erred in denying plaintiff penalties and attorney’s fees for defendant’s refusal to pay compensation benefits.
Offshore Hammers answered the appeal raising the following issue: Whether plaintiff has established a right to permanent-partial disability benefits.
FACTS
The trial court articulately and correctly stated the facts of the case in its written reasons for judgment. We adopt, as our own, its statement of facts, which provides as follows:
“Plaintiff was employed by Offshore Hammers as a truckdriver for approximately one year when on August 18, 1980, he suffered a myocardial infarction while in the course and scope of his employment with defendant. At the time of his attack, plaintiff was working an average of 119 hours per week.
“Plaintiff was hospitalized and convalesced for a 12 week period following his heart attack, at the expense of his employer, and was additionally paid compensation benefits in the amount of $148.00 (one hundred and forty-eight dollars) per week plus $125.00 (one hundred and twenty-five dollars) per week by the defendant/employer as an extra benefit. Plaintiff underwent medical treatment for the myocardial infarction, and was discharged by his treating physician on *494 November 3, 1980, with the instructions that he could return to work.
“In November of 1980, plaintiff did return to work as a truckdriver for Offshore Hammers, working an average of 60 hours per week, as recommended by his physician. His employer stopped all compensation payments at this time. Plaintiff continued working as a truckdri-ver for defendant until March of 1981, when defendant, in response to plaintiff and his attorney’s request that plaintiff be given lighter duties, reassigned plaintiff to a position of dispatcher. Plaintiff testified that this position involved working from 6:00 p.m. until 6:00 a.m., answering the telephone, and doing some janitorial type services at the office, such as emptying trash, mopping the floors, and cleaning up. Plaintiff also testified that as a dispatcher, he would also perform some forklift operations, as he had done before his injury in connection with his truckdriving duties, without difficulty.
“On two occasions in March of 1981, plaintiff visited Dr. Ben Jacobs. Plaintiff was complaining of chest and shoulder pains, and various tests were performed by Dr. Jacobs. Dr. Jacobs recommended only that plaintiff refrain from lifting objects greater than 50 pounds in weight, and restrict his work week to 60 hours per week.
“Subsequent to the report of Dr. Jacobs, plaintiff returned to work as a dispatcher for defendant. During this entire period of time, plaintiff continued to receive incremental salary raises, and to maintain an income on an average weekly basis equal to or greater than that which he maintained prior to his heart attack.
“In March of 1982, plaintiff was seen by Dr. Kerry Pulver, a resident in internal medicine at Ochsner Foundation Hospital, who was serving a term at the hospital in Houma under the auspices of Dr. Kieran Key. As a result of tests performed on plaintiff by Dr. Pulver, medication was prescribed to plaintiff in the event that he was enduring a muscle spasm or nerve impingement. No work-related restrictions were placed on plaintiff by Dr. Pulver, other than recommending that plaintiff avoid lifting heavy objects.
“Subsequent to this examination by Dr. Pulver, the plaintiff returned to work as a dispatcher for Offshore Hammers until sometime in April of 1982, when he quit the company. A separation notice was introduced into evidence at the trial on the merits reflecting a voluntary leaving of the company by plaintiff. There was no evidence adduced at trial to refute this. Subsequent to plaintiff leaving the employ of defendant, this suit for workman’s compensation damages was filed.”

Compensable Injury-

In urging that he is disabled, plaintiff contends that a myocardial infarction is a compensable injury.
It is clear that compensation benefits are due under LSA-R.S. 23:1031 in cases involving heart conditions resulting in disability when the accidental injury is caused or precipitated by the usual and customary actions, exertions and other factors directly connected with the employment and the accidental injury occurs on the job. Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975); Stubbs v. Parish of East Baton Rouge 343 So.2d 258 (La.App. 1st Cir.1977), writ denied 345 So.2d 506 (La. 1977).
Dr. Ben Jacobs, treating physician, testified that a heart attack can be brought on by physical stress as well as mental anxiety. Morgan testified that he averaged 119 hours a week as a truck driver for defendant. Morgan also stated that immediately prior to the attack, he had returned from a trip and had loaded and unloaded his truck. At the time of his attack, Morgan testified that he was in the midst of performing maintenance work on the vehicle. Furthermore, there is no evidence in the record which seriously disputes that plaintiff’s heart attack was work-related.
The trial court found, and we agree, that the evidence clearly establishes that *495 plaintiff’s injury occurred while he was on the job and that the circumstances, conditions, and nature of his employment caused, contributed to, or accelerated the onset of his heart attack.

Total and Permanent Disability

Plaintiff contends that the trial court committed manifest error in finding that he was not totally and permanently disabled, under the provisions of LSA-R.S. 23:1221(2), and therefore, not entitled to disability benefits.
In 1975, LSA-R.S. 23:1221(2) was revised to constrict the broad “same or similar occupation” formula then applied by the courts. Total disability compensation can now be obtained only if the employee is unable “to engage in any gainful occupation for wages, whether or not the same or similar occupation as that in which the employee was customarily engaged.” LSA-R.S. 23:1221(2); Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980).
In its written reasons for judgment, the trial court stated:
“Following his period of hospitalization and convalescence, plaintiff was discharged by his treating physician on November 3,1980, with the instructions that he could return to work, and without any limitations placed on him with respect to his occupation or work habits.
“Plaintiff did return to work as a truck driver for defendant in November of 1980. The wage and hour records of defendant submitted into evidence indicate that plaintiff was not frequently absent from work, nor was there any testimony given of plaintiffs inability to perform the duties of a truck driver at that time. The evidence indicates that the decision to alter the nature of plaintiff’s employment with defendant from truck driver to dispatcher in March of 1981 was in response to a request by plaintiff’s attorney that plaintiff be put on light duty, not involving driving activities.
“The Court is cognizant of the fact that plaintiff was experiencing chest pains when he resumed his truck driving duties in November of 1980. However, the testimony of Dr. Jacobs indicates that in his medical opinion, these chest pains described to him by plaintiff did not sound like cardiac pains (Deposition of Dr. Benjamin Jacobs, pp. 6, 11, 19). In fact, Dr. Jacobs testified specifically that as of the March 2, 1982 examination plaintiff was capable of truckdriving duties. He stated:
‘Well, physical exertion, I think, carried to an extreme and beyond his capabilities, may be a, or could conceivably be, a factor. Ordinarily, physical exertion the exertion of driving a truck, for instance — is probably not detrimental to him. I would not recommend he lift and unload heavy objects, as a sudden straining-type exertion; however, driving a truck physically is not too much exertion for him (Deposition of Dr. Benjamin Jacobs, p. 14).’
“The only limitation Dr. Jacobs placed on plaintiff as a result of the March, 1981 examination was that plaintiff restrict his working hours to 60 hours per week and that he not lift, any objects greater than 50 pounds in weight (Deposition of Dr. Benjamin Jacobs, p. 25). Of particular interest to this Court is Dr. Jacobs testimony that the main thing wrong with the plaintiff is the fact that ‘he emotionally does not want to work anymore and therefore, has a lot of stress from his job’ (Deposition of Dr. Benjamin Jacobs p. 14). Dr. Jacobs felt plaintiff could physically do his job, and further testified that, T think that the record is pretty clear this fellow was interested in trimming his job, and I got the impression that he was interested in not working, if possible (Deposition of Dr. Benjamin Jacobs, pp. 18-19).’
“Dr. Pulver, who examined plaintiff in March of 1982, testified that the complaints plaintiff was having then were atypical of angina. Dr. Jacobs made the same finding in his one evaluation of the plaintiff. In fact, Dr. Pulver found the complaints by plaintiff in the presence of normal EKG patterns, to be more positional than exertional, so that he ordered *496 tests to determine whether or not there were orthopedic or neurological reasons for the complaints. Medication was given to the plaintiff in the event that he was enduring a muscle spasm or nerve impingement (Deposition of Dr. Kerry Pulver, pp. 9-11, 14).
“Dr. Pulver was in agreement with Dr. Jacobs about the plaintiff’s ability to perform truckdriving and dispatcher-type job responsibilities in March of 1982 (Deposition of Dr. Kerry Pulver, p. 17). Specifically, Dr. Pulver states with respect to the capability of the plaintiff to do truck-driving activities that:
T am not really that familiar with how exertional truckdriving can be; but so long as it did not require any lifting, as in loading or unloading of the trucks and was primarily that of a sitting-down job, it would not have been in the realm of strenuous activity as I have described to him, and I thought it would probably be — so certainly this would have been covered in my notes (Deposition of Dr. Kerry Pulves [sic], p. 19).’
* * * * * *
“There was no medical evidence presented to show that plaintiff could not perform the work activities of a truckdri-ver as he had prior to his heart attack. In fact, plaintiff had, for a period of four months, returned to work in a truckdriv-ing capacity. The facts in evidence attest that the plaintiff can still drive a truck with some hourly limitations and can still do unloading-type activities, as long as the weights he must lift do not exceed 50 pounds; and further, plaintiff can still, per his own testimony, operate the forklift, which he did before and after his injury; and finally, the plaintiff can perform the services of a dispatcher, which he did for about one year prior to his voluntarily leaving the defendant’s employment.”
We find that the trial court correctly determined that plaintiff is not totally and permanently disabled, in that he is able to engage in gainful occupation for wages.

Odd-Lot Classification

In Oster v. Wetzel Printing, Inc., supra, the Supreme Court adopted the “odd-lot” doctrine of permanent, total disability. In Oster, the court formulated the following test:
“In order to determine whether the plaintiff fits within this category of odd-lot workers, he must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, that he ‘cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity. . . ’ If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd-lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with ‘a gainful occupation.’ It is fairer to place the burden on the defendant to show that there are steady jobs available to the plaintiff, after plaintiff has shown his odd-lot status, than to require the plaintiff to prove the universal negative of not being employable at any occupation .... ” (Citations omitted) 390 So.2d at 1323-1324.
Under the “odd-lot” test as announced in Oster, an injured employee is entitled to total, permanent disability benefits if his injury makes him an “odd-lot” in the labor market. Stated another way, if the claimant can prove that his physical condition, his mental capacity, his education, training, age or other factors combine to place him at a substantial disadvantage *497 in the competitive labor market, he has made out a case for classification in the “odd-lot” category. Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).
In the instant case, plaintiff claims total and permanent disability, alleging that various factors place him at a substantial disadvantage in the competitive labor market. Morgan claims that he is a functional illiterate, with no formal training. He contends that his lack of training and work history make him dependent on his physical ability as a manual laborer to acquire work and that, in light of his current physical condition, he is at such a disadvantage in the labor market that he is entitled to disability benefits under the “odd-lot” doctrine.
The trial court correctly determined that plaintiff failed to show that he cannot perform the “substantial and material parts of some gainful work or occupation with reasonable continuity.” After his injury, plaintiff was offered and accepted employment as a truck driver and later as a dispatcher. As a dispatcher, Morgan answered the telephone and performed light maintenance services. Morgan was also able to rest and relax during the performance of his job as a dispatcher. There was no showing that Morgan was excessively absent from work as a result of his condition, and Morgan earned as much money as dispatcher as he had as a truck driver, if not more.
The “odd-lot” doctrine is also applicable to substantial pain cases. The Supreme Court in Lattin v. HICA Corp., 395 So.2d 690 (La.1981) stated that substantial pain claims of total, permanent disability should also be determined within the framework of the “odd-lot” doctrine. The court reasoned that the “odd-lot” doctrine encompasses substantial pain cases because:
“[A] worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant’s pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him.”
In light of plaintiff’s work record subsequent to his injury and the medical evidence presented, the trial court was not convinced that plaintiff’s chest pains were a residual condition of the August 1980 heart attack. We agree.
There is no testimony in this case that plaintiff was in substantial pain during the performance of his work. To the contrary, the record establishes that from the time Morgan returned to work in November, 1980 until March, 1981, (when Morgan’s attorney requested that he be given lighter duties), plaintiff worked steadily as a truck driver. During that time, plaintiff neither complained of substantial pain to his employer nor did he request assistance in performing his responsibilities. Plaintiff continued to function as a dispatcher after the requested change, without complaint or excessive absence.
The medical evidence presented also does not substantiate plaintiff’s alleged substantial pain. Dr. Jacobs and Dr. Pulver testified that the chest pains complained of, or at least some of them, were noncardiac in nature. Dr. Pulver determined that these pains may have originated from nerve impingement or muscle spasm.

Partial Disability

LSA-R.S. 23:1221(3) provides that an employee is partially disabled if he cannot “perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience.” Stated another way, if a worker cannot return to the same or similar work but can return to gainful employment, he is entitled to an award for partial disability.
In the instant case, the trial judge found that after his heart attack, Morgan was capable of performing the same job he held prior to his injury. The medical evidence was uncontradicted that plaintiff can *498 perform truck driving activities, with the restrictions that he lift nothing greater than 50 pounds and that he limit his hours to a 60-hour work week. Morgan did, in fact, return to his job as a truck driver with Offshore Hammers, until he requested lighter duties and, subsequently, voluntarily quit working altogether. Furthermore, as a dispatcher, Morgan continued to operate a forklift, which was part of his job prior to his heart attack.
For the reasons previously mentioned, we find that the trial court was eminently correct in finding that plaintiff is not partially disabled.

Statutory Penalties

Plaintiff argues that Offshore Hammers’ refusal to pay compensation in light of a clearly compensable injury was arbitrary, capricious and without probable cause. Plaintiff contends that as a result of this unjust denial of benefits, he is entitled to invoke the penalty provisions of LSA-R.S. 22:658.
LSA-R.S. 22:658 provides for the assessment of penalties and attorney’s fees against an insurer for failure to pay policy benefits within 60 days after receipt of proof of loss and demand for payment, when such failure is found to be arbitrary, capricious, or without probable cause.
Since this provision is penal in nature, it is to be strictly construed and the stipulated sanctions should be imposed only in those instances in which the facts negate probable cause for nonpayment. Crawford v. A1 Smith P. & H. Service, Inc., 352 So.2d 669 (La.1977); Moore v. Millers Mut. Fire Ins. Co. of Texas, 406 So.2d 708 (La.App.2d Cir.1981), writ denied, 410 So.2d 1132 (La. 1982).
Plaintiff suffered a heart attack in August, 1980. At that time he was hospitalized and convalesced for a 12-week period. During the period of hospitalization and convalescence, Morgan’s employer (Offshore Hammers) paid compensation benefits in the amount of $148.00 per week and an additional $125.00 per week as an extra benefit. All medical expenses associated with treatment for the heart attack were paid by Offshore Hammers. On November 3, 1980, Morgan was discharged from his doctor’s care with instructions that he could return to work.
In November, 1980, plaintiff returned to work as a truckdriver for Offshore Hammers, assuming the same position he held prior to his injury. At that time all compensation benefits were stopped. Plaintiff continued his normal activities as a truck driver until March, 1981, when his attorney requested that Morgan be put on light duty. Offshore Hammers accommodated Morgan and placed him in the position of dispatcher, where he remained until he voluntarily left the company ten months later.
The medical evidence also supported the conclusion that Morgan was not entitled to compensation benefits. Each of the doctors who examined the plaintiff concluded that Morgan was capable of resuming truck driving activities with limited restrictions.
In view of the above, the plaintiff is not entitled to penalties and attorney’s fees because the termination of benefits by Offshore Hammers was not arbitrary and capricious.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal to be assessed against appellant.
AFFIRMED.