WILLIAMS, Judge.
The issue on appeal in this workers’ compensation suit is whether plaintiff is eligible for permanent total disability benefits as an “odd-lot” worker by reason of his inability to engage in any employment without incurring substantial pain. The trial court, without reasons for judgment, determined that Duplechain was partially disabled and entitled to benefits representing the difference between the wages he earned at the time of the injury on January 25, 1979 ($7.00 per hour) and any lesser wages which he actually earned any week thereafter in any gainful occupation until his benefits ceased. La.R.S. 23:1221(3) repealed in 1983 (in effect at the time of injury) states in pertinent part:
“For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar *177 character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason, of education, training, and experience, during the period of disability.”
We find no error in the judgment of the trial court that Duplechain’s pain does not appreciably limit the type of work available to him or greatly diminish his ability to compete in the labor market.
FACTS
Phillip Duplechain, a forty-two year old man, was employed as a machinist at Offshore Shipyards, Inc., in Venice, Louisiana. On January 25, 1979, while drilling a flange, he amputated his left thumb with a drill press he was operating. His left thumb was subsequently re-attached by Dr. Elliot Black, III.
Duplechain then underwent more than two years of treatment by Dr. Black, including a second operation to resection and reconnect the nerves leading to his thumb as well as treatment for causalgia. On April 13, 1981, Dr. Black released Duple-chain without restrictions in the use of his left hand. Based upon the discharge from the care of Dr. Black, Highlands Insurance Company terminated compensation benefits.
The medical testimony clearly shows that Duplechain suffers from a disability, but the extent of the disability is subject to dispute between the medical authorities. Dr. George Battalora, an orthopaedic surgeon found Duplechain has no active movement of the metacarpal and interphalan-geal joints of the thumb. He assigned an 80% loss of the physical function of the thumb and a 40% loss of the function of the hand. Dr. Kenneth Adatto, also an ortho-paedic surgeon, reached a roughly similar result finding an 82-82% disability rating.
The examinations by Dr. Carl F. Culicc-hia and Dr. Black reveal a substantially lower degree of disability. Dr. Culicchia, a neurosurgeon, testified that Duplechain experienced an incomplete regeneration of the peripheral nerves of the thumb and assigned a 10% impairment of the thumb. Dr. Black opined that when he released Duplechain, he could “function quite well with his hand” and on this basis, he determined that Duplechain had a 25% disability rating.
All medical authorities agree that Duple-chain suffers pain when slight pressure is exerted on the thumb’s surface. Dr. Batta-lora testified that Duplechain also experiences pain when firm pressure is applied, but, contrary to Dr. Battalora’s testimony, Dr. Black and Dr. Culicchia found he could withstand firm pressure without experiencing pain.
Various experts in the field of occupational therapy and vocational assessment testified as to Duplechain’s ability to function in the work place in light of his injury. Bobby S. Roberts measured Duplechain’s mental and physical abilities. His review of Duplechain’s work history reveals a pattern of jobs requiring manual labor: farm laborer, bakery helper, a laborer with a tree maintenance company and a machinist’s helper. Educational testing showed that Duplechain is functioning between the fourth and fifth grade level. Duplechain’s overall performance on a work sample assessment test measuring manual dexterity necessary for entry into the competitive labor market rated him below the first percentile as compared to employed workers who should score in the hundredth percentile. Mr. Roberts concluded that the jobs Duplechain could perform were limited in quantity and there was not a stable market for the types of jobs he could perform because many of them were filled by persons unemployed due to the local economy.
*178 Dr. Neal Gorman reached a contrary conclusion based on his review of the testing performed by Mr. Roberts. He testified that there were a great number of positions available which were compatible with Duplechain’s age, training, and experience within a close proximity of his residence.
Duplechain currently works for the Plaquemines Parish Council as a tractor driver and has held that position since June, 1981. Prior to this he worked at Automation Associates as a machinist’s helper and machinist.
Duplechain testified that his work as a tractor driver aggravates his condition primarily due to the vibrations of the tractor he operates. He characterizes the pain as a “throbbing” sensation. He testified that his duties as a tractor driver have been modified by his foreman and he requires the assistance of his fellow employees in performing his tasks.
EXTENT OF DISABILITY
The factual findings of the trial court in compensation cases, particularly those which involve the credibility of witnesses, are entitled to great weight, and will not be disturbed unless clearly wrong. Jerasi v. Shoney’s, Inc., 475 So.2d 11 (La.App. 4th Cir.1985). In Martin v. H.B. Zachary Co., 424 So.2d, 1002, the Supreme Court set forth the “odd-lot-working in pain” doctrine:
“In Oster v. Wetzel, 390 So.2d 1318 (La.1980), we adopted the so-called “odd-lot” doctrine which provides that the claimant is entitled to a total and permanent disability when he establishes a prima facie case that, because of the physical impairment and other factors such as mental capacity, education, and training, he can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist. 390 So.2d at 1324. The odd-lot concept may also be applied in cases where the worker, because of his injury, is in such substantial pain that work becomes an overburdening task. Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Lattin v. Hica Corp., 395 So.2d 690 (La.1981); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Whitaker v. Church’s Fried Chicken, Inc., 387 So.2d 1093 (La.1980).
Id. at 1105-06.
We do not find Duplechain is an odd-lot worker entitling him to total and permanent disability benefits. He has been engaged in gainful employment since the time of his release from Dr. Black and since his release, he has not been unemployed for any significant length of time. Despite Mr. Robert’s testimony to the contrary, Duplechain has twice competed for and obtained employment. Both positions required an interview, the completion of an employment application and a pre-employment physical examination. His earnings are consonant with what he earned prior to his injury. Duplechain has not been fired from any job since being released because of his physical disability. He voluntarily terminated his position at Automation Associates because he preferred to work closer to home and his position with the Plaquemines Parish Council allowed him to do this. Although Duplechain no longer works as a machinist, his employer at Automation Associates testified that this was because he lacked the essential skills to perform as a machinist. We cannot find that Duplechain suffers from such a debilitating injury that he should be treated similar to those plaintiffs for whom odd-lot status has been accorded. Oster v. Wetzel, supra; Whitaker v. Church’s Fried Chicken, supra; Turner v. American Mutual Ins. Co., 390 So.2d 1330 (La.1980).
Neither do we find that his pain appreciably limits the type of work available to him or substantially hinders his ability to work. Dr. Black released Duplechain without restrictions in the use of his left hand and no longer prescribed pain medication. While it is disputed by the medical authorities as to the amount of pressure Duple-chain can withstand on his thumb without experiencing pain, a condition which would affect his ability to grip an object; the trial court ultimately reached the conclusion *179 that he could grip an object without experiencing substantial pain. We cannot find that the trial court was manifestly erroneous in reaching its conclusion.
Duplechain’s work records also reveal that over the last three years, he has missed just one day of work for pain. He is able to alleviate the pain by drinking a beer or taking a Tylenol. Although he is relegated to performing manual labor and at times, experiences pain while working, Duplechain’s foreman has been willing to make concessions and has modified his duties if they appear to unduly tax him.
Like the plaintiff in Dusang, supra, Du-plechain experiences pain, but not to the point it requires hospitalization or prolonged absenteeism from his job. Although he does need the assistance of his co-workers to perform certain tasks, it has not been necessary to hire additional personnel to make up for his limitations. Accordingly, the trial court’s finding that Du-plechain is not totally disabled because of substantial pain was correct.
PENALTIES AND ATTORNEYS’ FEES
Finally, Duplechain claims that the termination of benefits based exclusively on Dr. Black’s release was arbitrary and capricious, thus making defendant’s liable under LSA-R.S. 23:1201.2. We find it was entirely reasonable for Highland to terminate benefits once it received a letter from Duplechain’s treating physician, Dr. Black, stating that he was unconditionally released from his care. This termination was based on competent medical evidence.
For the foregoing reasons, the judgment of the trial court is affirmed, all costs to plaintiff-appellant.
AFFIRMED.