BOUTALL, Judge.
Plaintiff, Randall Walgamotte, brought suit against his employer Avondale Shipyards seeking worker’s compensation benefits for total and permanent disability due to a knee injury which he incurred on the job. From a judgment finding his disability to be 10% partial loss of use of his right leg under the scheduled loss provisions of R.S. 23:1221(4)(h) and crediting against him the amount which he had already received under the Federal Longshoreman and Harbor Worker’s Compensation Act, plaintiff appeals. We affirm.
FACTS
Appellant, at the time of trial, was a 22 year old man with an 8th grade education. He was employed as a pipefitter at Avon-dale Shipyards when on December 11, 1979 his knee popped out of joint while he was lifting a heavy pipe. The next day appellant went to Ochsner Hospital for emergency treatment. Examination revealed a torn cartilage known as the medial meniscus. The cartilage could not be repaired and so appellant was operated on for its removal on January 22, 1980.
Dr. Jefferson Kaye, the operating physician, testified that he released appellant to return to work around April 7, 1980, and at that time furnished him with a return to work slip. Appellant altered the date on the slip (he says under the apparent impression that Dr. Kaye had told him to return to work when he felt able) and did not return *1158 to work until almost two months later at the end of May.
Appellant resumed his job at Avondale, however after a week he complained of serious pain in his right knee and felt unable to continue work as a pipefitter, which involves stooping, climbing, and squatting. Since Avondale considered appellant a good worker, he was kept on and assigned a less strenuous job in the pipe shop. Nonetheless appellant testified at that time he still experienced unendurable pain from standing eight hours a day.
Randy Walgamotte worked on and off from May until the end of August, 1980 and finally left Avondale’s employ of his own volition at this time. Avondale then began paying him weekly benefits of $117.00 under the Federal Longshoremen’s and Harbor Workers’ Compensation Act. Around this time appellant filed suit for total and permanent disability under the Louisiana Worker’s Compensation Act, and notified Avondale that he was electing to be paid under the state plan. The state act would, by appellant’s calculations, have yielded $148.00 per week as opposed to $117.00. Avondale did not acknowledge appellant’s choice and continued to pay him at the federal rate.
Appellant testified that after leaving Avondale he had two brief jobs at service stations. He stated that he was fired from the first when he told his employer that he could not perform a task involving heavy lifting which he had been ordered to do. Appellant testified that he was let go from the second job when he disclosed that he was involved in a workman’s compensation suit.
At the time of trial Walgamotte was employed as an investigative shopper for a security service. The job pays minimum wage and entails driving sometimes a distance of several hundred miles a day. He testified that his knee aches and stiffens up during these long drives.
Trial was had in the matter on June 2, 1981 in the 24th Judicial District Court for the Parish of Jefferson. The trial judge found Walgamotte to have a 10% partial disability of the right leg under La.R.S. 23:1221(4)(h) and gave defendant a credit for the sum which he had already been paid in Federal compensation benefits, sufficient to satisfy the award. Plaintiff has appealed that judgment.
ISSUES ON APPEAL
Walgamotte raises basically two issues on appeal:
1. Does appellant fall under the odd lot classification of total and permanent disability because he works in pain due to a work-related injury?
2. Did the trial court err in not awarding appellant penalties and attorney’s fees against appellee Avondale Shipyards under the provisions of La.R.S. 22:657 in connection with Avondale’s refusal to pay appellant under the state as opposed to the federal schedule of compensation, with its refusal to pay certain medical bills, and in its decision to cut off benefits in December of 1980?
ODD LOT STATUS
Appellant argues that he should fall under the “odd lot” classification of total and permanent disability due to the pain he suffers when he works, as a result of the knee injury he incurred while employed at Avondale.
The Louisiana Worker’s Compensation Act, La.R.S. 23:1221(2) provides lifetime compensation, “For injury producing permanent and total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience... ”
Nonetheless additional grounds for total and permanent disability have evolved through the jurisprudence as a means of providing for the totally and permanently disabled worker who does not fit within the statutory definition as quoted above.
*1159 Since the case of Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980) it has been clear under Louisiana law that a worker who cannot return to any gainful employment without substantial pain is entitled to compensation benefits for total disability.
The “odd lot” doctrine interlocks with the substantial pain cases in that if a worker must suffer substantial pain while he works he may be considered an “odd lot” in the job market (somewhat akin to a manufacturer’s second) because his injury has made him a less desirable employee or simply unable to compete with healthy workers for a job. The effect then, of the overlap between the odd lot and substantial pain doctrines is to broaden the criteria under which a worker who suffers substantial pain on the job could be found to be eligible for permanent and total disability compensation.
The Louisiana Supreme Court adopted the odd lot doctrine in the 1980 case of Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980), explaining as follows:
“In order to determine whether the plaintiff fits within this category of odd lot workers, he must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factors, that he “cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity. “Reese v. Preston Marketing Assoc., 274 Minn. 150, 142 N.W.2d 721, 723 (1966). If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with “a gainful occupation.” It is fairer to place the burden on the defendant to show that there are steady jobs to the plaintiff, after plaintiff has shown his odd lot status, than to require the plaintiff to prove the universal negative of not being employable at any occupation. Brown v. Safeway Stores, 82 N.M. 424, 483 P.2d 305, 308 (1971); Lyons v. Industrial Special Indem. Fund, 98 Idaho 403, 565 P.2d 1360, 1363 (1977); Larson, supra, subsection 57.61 at pp. 10-136-137.
Ibid at 1323, 1324.
Two of our recent Louisiana Supreme Court cases applying the Oster analysis as enunciated above have reached differing results. In Lattin v. Hica Corp., 395 So.2d 690 (La.1981) the Louisiana Supreme Court held that the plaintiff workman had met his burden of proof in establishing a prima facie case for odd lot classification. Plaintiff, a twenty-eight year old man with a high school education, sustained a mutilation of his foot while on the job. He was not released to return to work until over a year later, and then only under the condition that he wear a special safety shoe. Doctors rated his disability as 25-30% of the foot. Plaintiff was fired when he could not return to work due to pain and swelling in his foot. Medical reports and depositions of three treating physicians which were introduced at trial substantiated plaintiff’s claims of pain. All of the doctors acknowledged that damage to the nerves in the veins of his foot could be the cause of the pain which plaintiff was experiencing. The court found that plaintiff had established a prima facie case for total and permanent disability and remanded to afford defendant-appellant an opportunity to rebut plaintiff’s showing since the case had gone to trial prior to Oster, supra.
In Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982) the Supreme Court held that plaintiff had not made out a prima facie case for odd lot classification. While plaintiff was found to be suffering *1160 from silicosis which he had contracted on the job, the opinion of the experts was that he was still capable of moderate to heavy work in a silica free environment. Plaintiff was working as a tack welder at the time of the trial and had received other offers of employment. From these facts the court found the plaintiff to be partially, as opposed to totally, disabled under the provisions of La.R.S. 23:1221(3).
It is evident from a reading of these recent cases that the holdings turn upon the facts of each situation. In the instant case, in his Reasons for Judgment the trial judge concluded:
“After reviewing the depositions submitted, the court finds that the plaintiff is partially disabled under the provisions of La.R.S. 23:1221(4)(H) in the amount of ten per cent disability to his leg. The court is of the opinion that the plaintiff is not totally and permanently disabled nor is he partially permanently disabled based on a reading of the depositions and the testimony of the plaintiff.”
It is implicit in the trial judge’s finding of a scheduled disability under La.R.S. 23:1221(4), rather than total and permanent disability, that he concluded that the testimony of Walgamotte was not completely credible relative to his complaints of pain and inability to work. We reach the same conclusion.
Reviewing the facts of the instant case under the mode of analysis presented in Oster, supra, we find that the record does not substantiate appellant’s claim of total physical impairment due to substantial pain. Dr. Jefferson Kaye, the operating physician testified at trial that appellant had suffered a 5% impairment of the lower extremity as a result of the removal of his knee cartilage. His earlier estimate had been 10% impairment, which he revised downward after consulting guidelines issued by the American Academy of Orthopedic Surgeons. On the last occasion on which he had examined appellant, approximately six months before the trial, there was no lost motion in the leg and appellant did not walk with a limp. At no time during the course of his post-operative visits to Dr. Kaye did Randall Walgamotte ask for pain medication. It is also relevant to note that though appellant testified that during this period he was in constant pain while he worked, he skipped appointments with Dr. Kaye on April 30, May 7, July 3, October 7, November 24 and November 29, 1980. Appellant points out in his brief that during at least part of this time appellant was seeing Dr. Kenneth Saer at the request of his attorney. Dr. Saer's deposition and medical reports were introduced at trial. Dr. Saer’s medical opinion was that he could do nothing more for Randall Walga-motte than was already being done by Dr. Kaye. In Dr. Saer’s report of October 21, 1980, he stated, “I cannot explain the intensity of the symptoms of which he complains.” Neither doctor could find a medical reason for the severity of the pain which appellant testified that he suffers from. However, appellant has suffered atrophy of the right thigh. The doctors testified that this phenomenon is due to lack of post-operative exercise, i.e., a failure to follow suggested physical therapy. The final recommendation of both doctors was that appellant should and could return to work, even though Dr. Kaye advised that appellant should avoid stooping, climbing, and squatting when at all possible, and also conceded that appellant might have to live with some degree of pain in his knee.
Other related elements of the plaintiff’s burden of proof under Oster entail a showing that he does not have the mental capacity or physical skills required to be competitive for other jobs in the market, or as the Louisiana Supreme Court has recently expressed it, to prove that, “... as a result of a compensable injury, he is rendered unable to perform any service for which a reasonably dependable market exists.” Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981), at 1252. On this issue the testimony at trial was mixed. Appellant himself testified that he has an eighth grade education, that arithmetical calculations are difficult for him, and that he and his wife work as a team on their present job because he needs *1161 her assistance to get by. We note that his testimony as to his lack of understanding also puzzles us.
Appellant contends that the only other job for which he is trained is truck driving. At trial he called as a witness the former operations manager of a large chemical company here in Louisiana, a Ms. Beverly Bankston. Ms. Bankston, in charge of hiring and firing, testified with much candor that given the choice of two equally qualified candidates, one with appellant’s knee problem, her company would hire the other because her company does not hire the handicapped.
Additionally Walgamotte introduced the deposition of Dr. Courtney Russo at trial. Dr. Russo had been retained by plaintiff to evaluate him for the purpose of determining how he would make out with a pre-em-ployment physical when he applied for a job. The form which the doctor was to fill out was obtained from the chemical company mentioned above. Though Dr. Russo admitted he had never before conducted a pre-employment physical, he stated that he could not pass Randall Walgamotte in the “extremities” category.
However Mr. Cornelius Gorman, a vocational rehabilitation expert, testified for the defense that appellant underwent four hours of placement and evaluation testing under his supervision and that the results were above average. Randall Walgamotte scored at the eleventh grade level in verbal skills and at the sixth grade level in arithmetical skills. Mr. Gorman was of the opinion that with training appellant would be suited for a variety of technical jobs, giving drafting as one example.
Appellant also testified that after his injury he attended a few sessions of a high school equivalency or G.E.D. course and felt that he could follow the classes, but for reasons which do not appear in the record he stopped attending. Along the same lines Mr. Gorman testified to the variety of state vocational and technical training programs available to appellant at no cost.
While we remain mindful of the fact that “an odd lot claimant need not be absolutely helpless to qualify for total disability,” Lat-tin, supra, at 693, we nonetheless find after a review of the testimony that the record does not support appellant’s claims of total and permanent disability either due to substantial pain or limited job opportunities. Appellant was steadily employed at the time of trial and the expert testimony does not support his claim of substantial pain.
Therefore we hold that there was no manifest error in the trial judge’s finding that appellant has suffered a ten per cent disability to his leg under 23:1221(4)(h). Such a finding is supported by the testimony of Dr. Jefferson Kaye, the surgeon who operated on appellant’s knee.
FEDERAL VERSUS STATE BENEFITS
Appellant argues that, having made the election in August of 1980 to be paid under the State as opposed to the Federal scheme of compensation, he is now entitled to the difference between the $117.00 per week which he was paid under the LSHWA and the $148.00 per week which he alleges he was eligible for under the State Act. Since we have already found that the trial court did not err in finding that Randall Walgamotte was disabled under 23:1221(4)(h), it follows that he is not due any more than what that schedule allows him in compensation benefits. In his Reasons for Judgment the trial judge stated:
“... he [plaintiff] has already received a greater sum of money thru (sic) the temporary total disability provisions than he is entitled to under the ruling of the court. The court will award to the plaintiff the sum of money he has already received and will not grant the plaintiff any further recovery.”
The trial court then awarded defendant Avondale Shipyards a credit in the amount of benefits which it had already paid out to Randall Walgamotte under the LSHWA. This court approves the amount of the judgment awarded to appellant and the credit awarded to appellee, and will not disturb it on appeal.
*1162 PENALTIES AND ATTORNEY FEES
Finally on a related issue appellant argues that Avondale should be liable under La.R.S. 22:658 for penalties and attorney fees since appellee Avondale arbitrarily and capriciously refused to honor his election of benefits, refused to pay certain medical bills, and cut off appellant’s benefits in December of 1980.
As to the election of state benefits and Avondale’s cut-off of benefits in December of 1980, we find appellant’s argument to be without merit. Since appellant was found by the trial court to have received more money than he was entitled to for his disability under La.R.S. 23:1221(4)(h), and we affirm that finding, we decline to hold that Avondale was arbitrary and capricious in refusing to pay him an even greater amount.
However, as to appellant’s claim for medical expenses incurred in seeking a second opinion and treatment from Dr. Kenneth Saer, we award him that amount and assess penalties and attorney fees against appellant Avondale for arbitrary and capricious refusal to pay Dr. Saer’s bills.
La.R.S. 23:1203 provides in pertinent part:
“In every case coming under this chapter, the employer shall furnish all necessary medical, surgical and hospital services, and medicines, or any non-medical treatment recognized by the laws of this state as legal...”
We find that since appellant was still complaining of pain some six months after the operation on his knee, that he was entitled to consult the physician of his choice, and that the examination and evaluation by Dr. Saer constituted “necessary medical treatment” within the meaning of 23:1203. See Kinsey v. Travelers Insurance Company, 402 So.2d 226 (La.App. 1st Cir.1981). Accordingly we award appellant $195.00 in medical bills, 12% of the amount as penalty and $100.00 as attorney’s fees.
Appellant, also asks us to award expert witness fees for Dr. Saer, Dr. Russo and Ms. Bankston. The trial court cast the defendant-appellee for costs. Appellant’s remedy is a rule to fix costs in the trial court. On this record we are not able to make this determination.
The judgment appealed from is amended to award Randall Walgamotte the sum of $195.00 medical bills and 12% of that amount as a penalty along with $100.00 as attorney’s fees. As thus amended, the judgment is affirmed.
AMENDED AND AFFIRMED.