411 So.2d 708 (1982)
Alvin LAUGHLIN, Plaintiff-Appellee,
v.
CITY OF CROWLEY, Defendant-Appellant.
No. 8661.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
*709 Privat & Regan, Thomas K. Regan, Crowley, for defendant-appellant.
Miller, Miller & Craton, Jack Derrick Miller, Crowley, for plaintiff-appellee.
Before FORET, CUTRER and DOUCET, JJ.
FORET, Judge.
Alvin Laughlin (plaintiff) brought this workmen's compensation action to recover disability benefits, medical expenses, and penalties and attorney's fees from defendant, City of Crowley.
Trial of plaintiff's action resulted in a judgment in his favor ordering defendant to pay him disability benefits at the rate of $77.33 per week from August 21, 1980, until further orders were received from the court, together with penalties of 12% and reasonable attorney's fees of $1,700. In addition, defendant was ordered to pay all of plaintiff's medical expenses connected with his claim, both past and future.
Defendant appeals suspensively from the trial court's judgment and raises the following issues:
(1) Whether the trial court committed manifest error in finding plaintiff to be totally and permanently disabled as a result of personal injuries suffered in a work-related accident, while employed by defendant;
(2) Whether the trial court committed manifest error in finding defendant to have been arbitrary and capricious in terminating the payment of disability benefits to plaintiff.
Plaintiff answered the appeal and raises the following issues:

*710 (1) Whether the trial court committed manifest error in finding that defendant had good cause for failing to timely pay his medical expenses;
(2) Whether the amount awarded as attorney's fees should be increased, if this Court affirms the trial court's judgment.

FACTS
Plaintiff's claim arises out of an accident that occurred in Crowley, on April 17, 1980. On that date, plaintiff was employed as a sanitation worker by defendant and injured his back when he and a co-worker lifted a barrel containing discarded automobile parts onto the bed of one of defendant's trucks.
Plaintiff instituted this action on September 24, 1980, alleging that the injuries suffered in the accident had rendered him totally and permanently disabled or, in the alternative, partially disabled. Plaintiff further alleged: that he was entitled to disability benefits of $80 per week for as long as he is disabled; that defendant was responsible for all medical expenses, past and future, incurred for the treatment of his injuries; that defendant had terminated payment of his disability benefits and medical expenses without just cause, entitling him to penalties of 12% of the amounts due him, together with reasonable attorney's fees; and, that expert witness fees should be taxed as costs of court against defendant.
Defendant answered plaintiff's petition, admitting that he was employed by it on the date of the accident, and that compensation payments were made to him through August 21, 1980, but denying all other allegations contained therein.

PLAINTIFF'S ALLEGED DISABILITY
Defendant contends that the trial court committed manifest error in finding plaintiff totally and permanently disabled, under the provisions of LSA-R.S. 23:1221(2)[1], and entitled to benefits therefor. Essentially, defendant argues that plaintiff failed to prove his claim for benefits.
The plaintiff-employee in a workmen's compensation's action, in order to successfully maintain a claim for disability benefits, must prove, by a preponderance of the evidence: that he received personal injury by accident arising out of and in the course of his employment[2]; that he is disabled[3]; and, that his disability resulted from injuries sustained in the work-related accident[4].
The first issue for our determination is whether the trial court committed manifest error in finding that plaintiff received a personal injury by accident arising out of and in the course of his employment.
Plaintiff testified that one of his duties as defendant's employee was to drive a flatbed truck to different locations in Crowley to pick up trash and debris that regular garbage trucks were unable to handle. Frederick Roche (Roche) was also one of defendant's employees and was assigned to plaintiff as a helper. They followed regular routes in performing their duties and *711 would also respond to special requests for their services as directed by their supervisor, Oscar Primeaux (Primeaux).
Plaintiff and Roche reported to work at approximately 7:00 a. m. on the day of the accident. They went to the Goodyear dealership, a regular stop on their route, where they found some old, discarded tires and some 55-gallon oil drums filled with trash. Plaintiff alleges that he injured his back when he and Roche lifted one of the barrels onto the bed of the truck. Roche stated that right after they lifted the barrels, plaintiff told him that he felt something "pop" in his back. Plaintiff testified that he immediately experienced pain in his back.
Alfred E. Harmon, M.D., testified that he examined plaintiff on April 21, 1980, some four days after the accident occurred, and that plaintiff related the details of the accident to him. At that time, plaintiff's primary complaint was pain in his low back area. Dr. Harmon found tenderness in the left lumbo-sacral area, with a moderate amount of muscle spasm present. Plaintiff had some limitation of flexion from the waist and decreased deep tendon reflexes. X-rays revealed some generalized spur formation and degenerative changes of the lumbar vertebra. Dr. Harmon felt that these conditions pre-dated plaintiff's injury as they take months or years to develop. Dr. Harmon's diagnosis was that plaintiff was suffering from lumbo-sacral strain with possible lumbar disc disease or aggravation of a pre-existing disc pathology. Plaintiff was given a lumbo-sacral brace to wear and referred to a physical therapist for further treatment.
LSA-R.S. 23:1031 provides that compensation shall be allowed for accidental injury "arising out of and in the course of" the claimant's employment. Under the jurisprudence interpreting this statute, it has been held that the terms "arising out of" and "in the course of" are not synonymous but, nevertheless, must be considered together.[5] To "arise out of" the employment, the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. Time, place and circumstance must determine this.[6] An accident occurs during the course of the employment when it occurs during the time of the employment and at a place contemplated by it.[7]
The trial court's finding that plaintiff received personal injuries by accident arising out of and in the course of his employment is not clearly wrong.
The next issue is whether the trial court committed manifest error in finding that plaintiff was totally and permanently disabled under the "Odd Lot" doctrine.
In making determinations of whether an employee is totally and permanently disabled, Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980), concluded that the "Odd Lot" doctrine should be used as a guide in interpreting the provisions of LSA-R.S. 23:1221(2). Oster set forth the "Odd Lot" doctrine, as follows, on page 1320:
"In determining whether an employee is permanently and totally disabled, it is not a prerequisite that he be absolutely helpless. If the evidence of his physical impairment and of other such factors as his mental capacity, education, and training indicates that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does *712 not exist, the injured employee is entitled to total disability compensation unless the employer or his insurer is able to show that some form of suitable work is regularly and continuously available to the employee within reasonable proximity to his residence."
Oster found that a plaintiff makes a prima facie case for inclusion in the "Odd Lot" category, and satisfies his burden of proving that he should be awarded benefits for permanent and total disability, when he is able to show a combination of factors (physical impairment, mental capacity, education, training, age, availability of employment in his area, etc.) indicating that the services which he is able to render are so limited in quality, quantity, or dependability, that a market for his labor does not exist within which he can effectively compete. Once such a showing is made, the burden of proof shifts to the employer to show that there are jobs available to provide a steady income to the plaintiff or that will provide him with a "gainful occupation".
In the action before us, plaintiff has no education, training, or skills, and is 54 years old. He returned to see Dr. Harmon approximately two weeks after his first visit with persistent complaints of low back pain. Dr. Harmon re-examined him and found signs of nerve root irritation and muscle spasm in the lumbo-sacral muscles. He then referred plaintiff to an orthopedic surgeon, James R. LaFleur, M.D.
Dr. LaFleur examined plaintiff on June 19, 1980. Plaintiff told him of an earlier injury to his back[8] and that he had reinjured his back picking up a barrel while employed by defendant. Dr. LaFleur also found evidence of mild degenerative joint disease in plaintiff's lumbar spine and felt that this condition could have been aggravated by these two injuries. Dr. LaFleur stated that intensive physical therapy and/or a lumbar myelogram would be needed in order to make a definitive determination of whether plaintiff was suffering from a slipped disc or nerve root impingement. He opined that plaintiff should not engage in even moderate labor based on his findings.
Plaintiff continued to see Dr. Harmon until August 6, 1980, complaining of pain in his back. Dr. Harmon's examination, conducted on that date, revealed tenderness and swelling of the left lumbo-sacral area, but no apparent muscle spasm. Dr. Harmon again found signs of nerve root irritation. However, he released plaintiff from his care because he felt that he had offered enough conservative medical treatment and could do no more. He examined plaintiff once more on March 10, 1981, the date of trial, and found plaintiff's condition essentially unchanged from the prior examination. He felt that plaintiff would never be fit for heavy duty work in the future.
Defendant has presented no evidence showing that there are jobs available to provide a steady income to plaintiff or that will provide him with a gainful occupation.
The trial court's finding that plaintiff is totally and permanently disabled under the provisions of LSA-R.S. 23:1221(2), and under the "Odd Lot" doctrine, is not clearly wrong.
The final issue is whether the trial court committed manifest error in finding a causal connection between the injuries suffered by plaintiff in the work-related accident and his disability.
Plaintiff argues that he is entitled to benefit from the following presumption, recently restated in Allor v. Belden Corporation, 393 So.2d 1233 (La.1981), on page 1236:
"On the specific issue of the causal connection between the accident and the disability, the claimant is entitled to the benefit of a presumption in certain cases. If an otherwise healthy worker suffers an accident at work and is thereafter disabled, it is presumed that there is a causal connection between the two, so long as the medical evidence establishes a reasonable possibility of such a connection." (Emphasis ours.)
*713 This presumption is unavailable to plaintiff as the evidence shows that he is not "an otherwise healthy worker". Both medical experts testified that they found plaintiff to be suffering from a degenerative condition affecting his spine.
However, the jurisprudence is clear that the employer takes the employee as he finds him, and that an employee's disability is compensable if a work-related accident aggravates or accelerates a pre-existing condition to produce disability. Cadiere v. West Gibson Products Co., Inc., 364 So.2d 998 (La.1978); Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977); Johnson v. Travelers Insurance Company, 284 So.2d 888 (La. 1973).
Plaintiff testified that before he was employed by it as a sanitation worker, he had worked for defendant part-time. He was assigned to work in the graveyard where he mowed the grass with a push mower and leveled dirt with a shovel. He would also have to haul dirt in a wheelbarrow. He did this type of work for five or six months before going to work full-time with defendant in October or November of 1979. He was apparently able to perform his duties as a sanitation worker (emptying barrels of trash, picking up discarded objects, etc.) for the next five or six months until the accident occurred. He has been unable to perform light to moderate labor since then without experiencing pain in his back.
Dr. Harmon testified that he believed that plaintiff's pre-existing back condition had been aggravated by injuries received in the accident. He felt that plaintiff would have been experiencing "rather severe pain" had he been performing his duties as a sanitation worker, prior to the accident, with his back in its present condition. Dr. LaFleur examined plaintiff only once for evaluation. He stated that the accident could have aggravated plaintiff's pre-existing back condition.
The trial court's finding of a causal relationship between plaintiff's disability and the injuries he received in the work-related accident is not clearly wrong. Thus, plaintiff is entitled to recover disability benefits from defendant.

PENALTIES AND ATTORNEY'S FEES
Defendant contends that the trial court committed manifest error in finding that it had acted arbitrarily, capriciously, and without probable cause in terminating payment of disability benefits to plaintiff on August 21, 1980. Defendant argues that it was entitled to rely on medical reports it received and that these reports indicated that plaintiff had suffered no disabling injuries in the accident.
Daniel R. Hughes (Hughes) testified that he was claims manager for All Risk Management Services, which is a supporting facility for a program in which defendant participates, set up by the Louisiana Legislature called "Self Insurance Funding for Governmental Subdivisions". Hughes handled workmen's compensation claims for defendant and made the decision to terminate payment of disability benefits to plaintiff. His decision was based solely on reports sent to him by Dr. Harmon, Dr. LaFleur, and Stephen Wilson, M.D., an orthopedic surgeon. Dr. Wilson did not testify at trial. However, his report was allowed in evidence, over plaintiff's objection, for the sole purpose of showing what Hughes had based his decision on.
We have reviewed these reports and note that none of them state that plaintiff may return to work. The reports of Drs. Harmon and LaFleur state that they had made positive findings indicating that plaintiff could be suffering from a ruptured disc and that further tests were necessary before a definitive diagnosis could be made. However, Hughes testified that he told Dr. LaFleur that defendant would not pay for a myelogram if the test was related to, or made necessary by, plaintiff's pre-existing condition. Plaintiff was unable to have this test performed because of his own poverty and defendant's equivocal consent to pay for it.
The trial court's finding that defendant was arbitrary, capricious, and without *714 probable cause in terminating payment of disability benefits to plaintiff is not clearly wrong.

ANSWER TO APPEAL
Plaintiff contends that the trial court committed manifest error in finding that defendant's failure to timely pay his medical bills was with good cause and not arbitrary and capricious.
The evidence shows that defendant had paid all of plaintiff's medical expenses at the time of trial. Hughes testified that, before paying such bills, it was customary procedure for him to wait for medical reports to substantiate them. The evidence shows that the bills were paid once the reports were received.
The trial court's finding that the defendant had good cause to delay payment of plaintiff's medical expenses is not clearly wrong.
Finally, plaintiff contends that we should raise the trial court's award of reasonable attorney's fees to include fees for legal services rendered in connection with this appeal. We agree and increase the award for attorney's fees by $750.00.
For the above and foregoing reasons, the judgment of the trial court is affirmed. We award plaintiff $750.00 for attorney's fees for a total award of $2,450.00 for this item.
All costs of this appeal are assessed against defendant-appellant.
AFFIRMED, AS AMENDED.
NOTES
[1] "(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability."
[2] See LSA-R.S. 23:1031; Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980); Gorbach v. Prager, Inc., 310 So.2d 604 (La. 1975); Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
[3] See Guidry v. Ford, Bacon & Davis Construction Corp., 376 So.2d 352 (La.App. 3 Cir. 1979); Soileau v. Bituminous Casualty Corp., 348 So.2d 1313 (La.App. 3 Cir. 1977); Hamilton v. Georgia Pacific Corp., 344 So.2d 400 (La.App. 1 Cir. 1977).
[4] See authorities cited in Footnote # 1; Hammond v. Fidelity & Casualty Co. of New York, 407 So.2d 13 (La.App. 3 Cir. 1981); Hall v. Houston General Insurance Co., 377 So.2d 561 (La.App. 3 Cir. 1979), writ denied, 379 So.2d 10 (La.1980); Soileau v. Bituminous Casualty Corp., supra.
[5] See Lisonbee v. Chicago Mill and Lumber Company, 278 So.2d 5 (La.1973); Renfroe v. City of New Orleans, 394 So.2d 787 (La.App. 4 Cir. 1981), writ denied, 399 So.2d 621 (La. 1981).
[6] See Lisonbee v. Chicago Mill & Lumber Co., supra; Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19 (1932).
[7] See Lisonbee v. Chicago Mill & Lumber Co., supra; Renfroe v. City of New Orleans, supra; Whitney v. U. S. Fidelity & Guaranty Insurance Co., 373 So.2d 728 (La.App. 2 Cir. 1979), writ denied, 376 So.2d 320 (La.1979).
[8] Plaintiff had injured his back in 1969, while constructing board roads in the oilfields.