FORET, Judge.
John 0. Stevens (plaintiff) brought this workmen’s compensation action against Matlack, Inc., his employer.
The trial court rendered judgment finding plaintiff to be permanently partially disabled, awarding him weekly benefits, for 450 weeks, medical expenses, statutory penalties, and attorney’s fees of $1,000.
Defendant appeals from the trial court’s judgment and raises the following issues:
(1) Was there an unexpected or unforeseen “accident” which happened suddenly and arose out of and in the course of plaintiff’s employment; and
(2) Was defendant’s failure to pay plaintiff compensation benefits arbitrary, capricious and without probable cause?
FACTS
There is no dispute concerning the fact that plaintiff is disabled as a result of a heart attack suffered on March 26, 1981. On that date, plaintiff was employed by defendant as a truck driver and was on call. He was summoned to report to work and did so around noon. He checked out a tractor-trailer truck at defendant’s Lake Charles terminal and was sent to Sulphur to pick up a load of water to haul to a construction site. Plaintiff arrived at the Sul-phur Water Company around 2:00 P.M. and waited a short time, while another truck was being loaded. He then pulled his truck up to the loading dock, and he and another worker prepared it for loading. Plaintiff climbed on top of the trailer to watch as it was being filled so that he could signal the other worker to shut the water off when necessary. While on top of the trailer, plaintiff began to suffer chest pains and climbed down to get a drink of water. The chest pains grew worse and he requested to be taken to a hospital. He was taken to the West Calcasieu-Cameron Hospital and admitted.
Plaintiff was examined by Dr. Luther McEachern, a cardiologist, who diagnosed plaintiff’s malady as an acute inferior myocardial infarction (a moderately-severe heart attack). Plaintiff spent nine days in the hospital, being discharged on April 3, 1981. He was again hospitalized at St. Patrick’s Hospital in Lake Charles on May 19, 1981, where he underwent certain surgical procedures to determine the extent of damage done to the heart muscle and the condition of the blood vessels supplying that organ. He was discharged after two days and has required no further hospitalization. Plaintiff is currently being maintained on medication and his condition is being monitored regularly. He has worked at certain jobs for short periods of time since his heart attack.
Plaintiff instituted this action after defendant refused to pay him any compensation benefits. Defendant maintains the position that plaintiff has not suffered a com-pensable injury.
PLAINTIFF’S DISABILITY AND CAUSATION
LSA-R.S. 23:1031 provides, in pertinent part, that:
“§ 1031. Employees’ right of action; joint employers, extent of liability
If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.”
Defendant contends that the trial court committed manifest error in finding that plaintiff had suffered personal injury by accident arising out of and in the course of his employment.
Under the jurisprudence interpreting LSA-R.S. 23:1031, it has been held that the terms “arising out of” and “in the course of” are not synonymous but, never *1315 theless, must be considered together[1]. To “arise out of” the employment, the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed. Time, place and circumstance must determine this[2].
It is defendant’s position that plaintiff has failed to prove that his heart attack resulted from some risk to which he was subjected in the course of his employment by the nature of his employment. It points to the evidence showing that plaintiff has been diagnosed as suffering from arterio-sclerotic coronary artery disease and hypertension. It further points to the existence of certain risk factors associated with plaintiff’s state of health prior to the heart attack, i.e., heavy smoking, obesity, and a high cholesterol level. Defendant argues that plaintiff’s heart attack resulted from his pre-existing heart disease and the associated risk factors, rather than any risk associated with his employment.
The issue of causation where a worker suffering from a pre-existing heart disease experiences a heart attack on the job has been a particularly troublesome one for the courts. However, in Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982), the Louisiana Supreme Court had occasion to confront this issue in a case with facts and circumstances similar to those sub judi-ce [3]. Decedent in Guidry suffered an acute myocardial infarction secondary to arterio-sclerotic heart disease minutes after pausing for a smoke break while at work. Gui-dry, after noting that myocardial infractions have been found to satisfy the statutory requirements of bodily injury by accident, stated that:
“The more difficult question is whether the heart attack must be the consequence of some increased job-associated risk; in that sense, whether it can be said to arise out of the employment.”
Guidry undertook an exhaustive review of the prior jurisprudence related to this issue, and then held that:
“This burden of plaintiff’s is to show by a preponderance of the evidence that the work effort, stress or strain in reasonable probability contributed in some degree to the heart attack. Anything less and it can hardly be said that the accident arose out of the employment or that the employment in any measure contributed to the accident.”
“If the physical exertion, stress, or strain on the job, and preceding the infarction, is no more than the worker would likely have experienced in a non-work situation, the attack may be the result of the natural progression of the pre-existing disease rather than the result of the employment activity.”
Guidry then set forth the following rules:
“For the heart accident to arise out of or be connected with the employment, the exertion stress or strain, acting upon the pre-existing disease, must be of a degree greater than that generated in everyday *1316 non-employment life (e.g., as compared to the more or less sedentary life of the average non-worker).”
“In other words if the activities in which the worker with a pre-existing heart disease is engaged, whether for his job usual and customary or not, entail exertion, stress or strain greater than would be involved in everyday non-employment life and he experiences a heart accident, he has made a prima facie showing that the accident arose out of or was connected with, the employment.”
“However, simply being at work on the job is not enough, since at the time of and for an appreciable period before the accident such worker (i.e., with a pre-existing heart disease) may not have been engaged in his usual stressful activities, or his usual work may have been of a sedentary nature, or may have involved no physical stress or exertion beyond that generated in everyday non-employment life. In either of these latter cases, it is difficult to say that the accident arose out of the worker’s employment rather than that the accident arose out of or was prompted simply by the pre-existing heart disease.”
In the present action, plaintiff was a 35-year-old male suffering from a pre-exist-ing heart disease. He had driven a tractor-trailer truck from Lake Charles to Sulphur, prepared it for loading, and then climbed on top of the trailer. Shortly thereafter, he suffered a heart attack. We find that these activities involve stress, exertion, and strain greater than that generated in everyday non-employment life, and greater than that generated in the more or less sedentary life of the average non-worker.
Dr. McEachern testified that persons with plaintiff’s condition must be able to pace themselves in order to reduce the risk of heart attacks. The evidence showed that, prior to suffering his heart attack, plaintiff’s employment with defendant often required him to work long and irregular hours. After suffering his heart attack, Dr. McEachern advised plaintiff to terminate his employment with defendant because he was unable to control the hours he would work. Thus, there is some medical evidence in the record establishing causation between plaintiff’s employment and his heart attack, and of course, his subsequent disability. See Hammond v. Fidelity & Casualty Company of New York, supra.
It is our opinion that plaintiff has proved, by a preponderance of the evidence, that his heart attack (the accident) arose out of his employment with defendant.
Defendant also argues that plaintiff failed to prove that he suffered the heart attack in the course of his employment. It points to conflicting evidence showing that plaintiff may have suffered some chest pains and shortness of breath (both of which can be symptoms of an impending heart attack) before the date on which he suffered the heart attack, and on the morning of that date before reporting to work.
An accident occurs during the course of employment when it occurs during the time of employment and at a place contemplated by it[4]. The uncontradicted evidence clearly shows that plaintiff experienced chest pains while loading defendant’s truck, and that these pains became quite severe once he climbed down from the trailer. Dr. McEachern’s medical reports note that plaintiff was admitted to the hospital with
“... chief complaint of sudden onset of severe precardial substernal chest tightness and pain radiating to the left shoulder and down the left arm.”
The report further states that,
“The pain did not respond to Nitrates and required Morphine for improvement although it was not fully relieved.”
Plaintiff was then hospitalized for some nine days, where it was confirmed that he *1317 had suffered a heart attack. There is clearly no merit to any argument that plaintiff’s heart attack occurred at any other time than while he was loading defendant’s truck.
The trial court correctly found that plaintiff had suffered bodily injury by accident arising out of and in the course of his employment with defendant.
PENALTIES AND ATTORNEY’S FEES
Defendant contends that the trial court committed manifest error in finding that its refusal to pay plaintiff disability benefits and medical expenses was arbitrary, capricious, and without probable cause, entitling plaintiff to an award for penalties and attorney’s fees. We agree.
The evidence presented in this ease shows the existence of very close legal and factual questions as to whether the work-related stress was extraordinary or any greater than that of everyday life, and whether this stress contributed to plaintiff’s heart attack. These serious questions could only be resolved by trial. Defendant’s failure to pay benefits within sixty days under these circumstances was not arbitrary, capricious, or without probable cause. See Guidry v. Sline Industrial Painters, Inc., supra; McDonald v. International Paper Company, 406 So.2d 582 (La.1981); Hammond v. Fidelity & Casualty Co. of New York, supra.
DECREE
For the above and foregoing reasons, the judgment of the trial court awarding plaintiff disability benefits and medical expenses is affirmed. That portion of the trial court’s judgment awarding plaintiff penalties and attorney’s fees is reversed.
Costs of this appeal are assessed against plaintiff and defendant, equally.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

. See Laughlin v. City of Crowley, 411 So.2d 708 (La.App. 3 Cir.1982), and authorities cited therein.

. Ibid.

. For the latest expression of the Louisiana Supreme Court on this issue of causation, when the injured worker is suffering from a pre-existing disease, see Hammond v. Fidelity & Casualty Co. of New York, 419 So.2d 829 (La.1982). Hammond involved a worker suffering from a pre-existing cancer, which disease may have been made manifest by injuries suffered by the worker in a work-related accident. Hammond noted that a distinction must be made between the “medical” meaning of cause and the “legal” meaning of cause. “Medical” cause refers to the etiology or origin of a particular disease, while “legal” cause refers to whether the particular incident in question contributed to the plaintiff’s disability by making manifest, symptoms previously unnoticed. “Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence.” See Haughton v. Fireman’s Fund American Insurance Companies, 355 So.2d 927 (La.1978).

. See Laughlin v. City of Crowley, supra, and authorities cited therein.