SEXTON, Judge.
The plaintiffs, the widow and dependents of the decedent, appeal the trial court judgment denying their claim for worker’s compensation death benefits, funeral expenses, penalties and attorney’s fees. We reverse.
At the time of his death from a heart attack, the decedent, age 57, was an employee of the defendant, M-N Utilities, Incorporated. He had worked for the defendant since the mid-1960s. He was a foreman, whose duties included checking water wells and sewer lift stations, connecting new customers, performing disconnections for non-payment of accounts, and transferring service for moving customers. On the day of his death, December 10, 1984, the decedent reported for work at his usual time, 8:00 a.m. The service orders for that day showed that the decedent was to lock or pull the water meters providing service to three customers. The service orders showed that he had to put a lock on only one of the water meters. This activity involved his moving a five to six pound metal meter cover, getting down on his knees and, with the use of a wrench, exerting pressure sufficient to close off the valve which supplied water to the residence, and then replacing the metal cover. The cover is removed by prying the cover *1192 up with a tool such as a screwdriver and then sliding it over. The metal wrench used in closing off a valve is 24 to 28 inches long and weighs three to four pounds.
In addition to performing these service orders, the decedent was required to make daily inspections of two water wells and four sewer lift stations. Checking a water well involves driving up to the well and opening the gate to get in. The worker then looks at the gauges which are located above ground. Checking a sewer lift station involves looking at the float control which is located above ground to determine whether the station is operating properly. The worker also checks to see if the pumps are primed. If the pumps are cool, then water is running through them and they are operating properly. While the decedent did check to see that the facilities were working properly, he did no maintenance. Apparently, these facilities were working properly because there is no evidence that the decedent had to perform any maintenance on them; thus, the only physical exertion in relation to inspecting these facilities was that involved in a routine check.
The decedent also had to handle a reported blockage of a sewer line in his assigned area. The service order that he completed for this blocked sewer line indicated that the sewer was leaking at the manhole. Because he worked alone, it is not known precisely what the decedent did in regard to this problem. The testimony of a former co-worker of the decedent, who happened to be the decedent’s brother-in-law, and the testimony of the president of the defendant company indicated that if the manhole was overflowing, the decedent would not necessarily have removed the manhole cover. He would, however, go to the next manhole upstream. If it wasn't running over, then he would remove that manhole cover to determine whether the sewer was flowing at that point. He would continue checking manholes in this manner until he found one in which the sewer had quit flowing. By following this procedure, he would know which two manholes the blockage was between. It was not his responsibility to unblock the sewer.
The decedent reported the blockage to his office as he was supposed to do. The office then contacted West Ouachita Sewer, the contractor responsible for unblocking sewer lines. The contractor sent two employees to unblock the sewer. The procedure to unblock a sewer is to pump water from the truck tank through the sewer. The employees testified that when they arrived, the decedent pointed out the overflowing manhole and told them which way the line ran. He did not locate the specific point of blockage for them. The sewer contractor’s employees then “walked the line” until they found a manhole that was not blocked. They looked at approximately three manholes before they found the correct one. They inserted the hose and began pumping water. The decedent sat in the truck while they located and cleared the blockage. They testified that when they ran out of water, they drove to a fire hydrant to refill their tank and the decedent followed them. The decedent sat in his truck while they filled the tank. They then drove back to the site of the blockage. The decedent followed them; however, he never arrived at the site. He was later found dead in his pickup truck. The truck had veered off the road and hit a tree. Death occurred between 3:10 p.m. and 4:00 p.m. The autopsy revealed that he had suffered a massive heart attack. The autopsy also showed that the decedent was afflicted with long-standing severe atheros-clerotic coronary disease with myocardial damage. It is undisputed that neither the decedent nor his family knew about his pre-existing heart condition.
The decedent’s widow and dependents brought suit to recover worker’s compensation death benefits, funeral expenses, penalties and attorney’s fees. They asserted that the heart attack which the decedent suffered arose out of the physical activity that the decedent engaged in on the day of his death and stress that he encountered on the job.
Finding that the decedent’s heart attack was not causally related to his work, the trial court denied the plaintiffs’ claim. In written reasons for judgment, the trial *1193 court stated that there was no evidence of any work-related event, strain, exertion, or physical activity on his part on any of the few days preceding his death or on the day of his death which was out of the ordinary or excessive or in any way unusual. The court found that according to the medical evidence, the decedent’s pre-existing heart condition was so severe that the decedent’s death was “a fate doomed to occur at any time” and that he had “a time bomb in his chest.”
The court did find considerable stress upon the decedent in his family life. His older daughter has been blind, deaf and epileptic since age four. The decedent was also supporting his other daughter and her three children.
The plaintiffs appealed, making seven assignments of error which we perceive to raise four issues: (1) whether the trial court erred in finding that the decedent’s heart attack was not caused by work-related physical activity; (2) whether the trial court erred in finding that the decedent’s heart attack was not caused by work-related emotional stress; (3) whether the trial court erred in excluding evidence of the employer’s refusal to pay the bill for ambulance services incurred on the date of the decedent’s death; and (4) whether the plaintiffs are entitled to penalties and attorney’s fees.
Under LSA-R.S. 23:1031, an employee who sustains personal injuries by accident arising out of and in the course of his employment is entitled to worker’s compensation. There is no question that the employee in this case suffered a heart attack while in the course of his employment. An accident occurs in the course of employment when it happens during the time of employment and at a place contemplated by the employment. Reid v. Gamb, Inc., 509 So.2d 995 (La.1987); Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982). His death occurred during his working hours and at a job site.
The medical evidence consisted of the testimonial depositions of two doctors. Dr. P.G. Grodman is the pathologist who performed the autopsy on the decedent. The autopsy revealed that the decedent suffered from “long standing severe atheros-clerotic coronary artery disease with myocardial damage.” The two most important arteries were severely damaged. The right artery had been closed on some previous occasion; a fresh closing of this artery had occurred 12 to 24 hours before the time of death. The left artery had sustained damage moments before death. That artery-had an opening that was the size of a pinpoint. Dr. Grodman testified that the heart attack could have occurred at any time and at any place.
Dr. William D. Smith reviewed the autopsy report. Dr. Smith’s practice is fifty percent general medicine and fifty percent cardiology. His cardiology practice is limited to diagnosis and treatment. His testimony is fairly consistent with that of Dr. Grodman. Dr. Smith added the opinion that an occlusion had formed four to six hours prior to death. Thus, the occlusion formed during working hours. While Dr. Smith acknowledged that the heart attack could have occurred while the decedent was watching television or sleeping, he also stated that physical exertion of the type that the decedent engaged in on the day of his death could have produced the heart attack.
In Guidry v. Sline Industrial Painters, Inc,, supra, the Supreme Court established guidelines to determine whether a cardiovascular incident arises “out of the employment.” This phrase contemplates that the accident should be the result of a risk to which the employee is subjected in the course of his employment to which he would not have been subjected had he not been so employed. In addition, this risk should be greater than a risk occasioned by a person not engaged in that employment.
Noting the difficulty in determining whether a heart attack is the consequence of some increased job-associated risk, the court, after a detailed discussion of the development of the jurisprudence, concluded:
For the heart accident to arise out of or be connected with the employment, the exertion stress or strain, acting upon *1194 the pre-existing disease, must be of a degree greater than that generated in everyday non-employment life (e.g., as compared to the more or less sedentary life of the average non-worker).
In other words if the activities in which the worker with a pre-existing heart disease is engaged, whether for his job usual and customary or not, entail exertion, stress or strain greater than would be involved in everyday non-employment life and he experiences a heart accident, he has made a prima facie showing that the accident arose out of or was connected with, the employment.
Guidry, supra, at 633 (footnotes omitted, emphasis supplied).
The fact that the heart attack was inevitable does not necessarily rule out an award. Reid v. Gamb, Inc., supra.
The plaintiffs maintain that the activity engaged in by the decedent on the day of his death was greater than or at least equal to the activities of the employees in Guidry and Stevens v. Matlack, Inc., 420 So.2d 1313 (La.App. 3rd Cir.1982). In Guidry, the decedent, a painter, held a ladder while his co-worker painted the top portions of warehouse doors. Both employees painted the lower portions of the doors. The heart attack occurred while the decedent was taking a break. In Stevens, the employee reported for work at noon, checked out a tractor-trailer truck at his employer’s Lake Charles terminal, and was sent to Sulphur, Louisiana to pick up a load of water to haul to a construction site. He arrived in Sul-phur at 2:00 p.m. He pulled his truck up to the loading dock and he and another worker prepared the truck for loading. The plaintiff climbed on top of the trailer to watch the loading of the water. He began suffering chest pains while on the trailer. He was taken to the hospital where he was diagnosed as having suffered a heart attack. In both cases the courts found that the heart attack had arisen out of the employment.
In summary, the decedent’s physical activity began at 8:00 a.m. on the day of his death. He checked most, if not all, of the water wells and sewer lift stations in his assigned area. He drove to each location, got out of his truck, checked to see that the facility was working properly, got back in his truck and drove to the next facility. He also made three other stops to disconnect the water service of three non-paying customers. Although the service to two of these residences had already been cut off, our appreciation of the record is that he had to move the manhole cover to discover this fact. He also had to lock the valve that provides water service to the third customer. This procedure involved sliding a five to six pound metal cover off the manhole, getting on his knees, reaching into the manhole, using a wrench to turn the valve, and then replacing the manhole cover.
Conceptually, the exertion of the decedent during the performance of his duties does not seem to provide a significant risk greater than that facing one not engaged in this employment. While the decedent’s activities were not sedentary, they do not seem to be greater than that which the average person would face in performing routine tasks around the home or running errands in an automobile. However, factually, the exertion evidenced here is surely greater than that of the truck driver in Stevens and seems at least equal to the activities of the painter in Guidry. Moreover, we observe that when each of the work activities of the deceased are isolated and taken one by one, each activity does not seem very strenuous. However, when taken together over a workday, they would seem to have a cumulative or potentiating effect. For these reasons, we determine that the trial court was in error and that appropriate worker’s compensation death benefits should be awarded.
Because we have determined that the decedent’s exertion satisfies the Guidry criteria, it is unnecessary for us to determine whether the decedent experienced job-related emotional stress that could have caused his heart attack.
The decedent was taken from the scene of the accident by Metro Ambulance, *1195 Ltd. to the hospital. The employer refused to pay this bill which totaled $81. Since Mrs. Hibbard has recovered in this action, she is entitled to reimbursement of this fee. LSA-R.S. 23:1203.
The plaintiffs’ final argument is that the defendants owe penalties and attorney’s fees because they were arbitrary and capricious in denying their worker’s compensation claim. The evidence in this case reveals that the question of whether the decedent’s heart attack arose out of his employment was a close one. Accordingly, we do not find that the defendants were arbitrary and capricious in denying benefits. Guidry, supra.
DECREE
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of plaintiffs as follows:
IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of the plaintiffs, Mrs. Bert T. Hibbard, Jr., Theresa Ann Hibbard, and Vicki Marie Wilson as administratrix of the estates of her minor children, Mary Ellen Clinton, Bryan Christopher Wilson and Barbara Jane Wilson, and against the defendants, M-N Utilities, Incorporated and Commercial Union Insurance Company for such worker’s compensation benefits as are recoverable under law as it existed at the time of the decedent’s death, including the ambulance bill and burial expenses together with legal interest thereon, all in accordance with law.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of this litigation are assessed against the defendant.
REVERSED AND RENDERED.